**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

## NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style:  Allen et al v. United States of America**

**Case Number:    2:06-cv-00879-WKW**

**Referenced Pleading:**    BRIEF/MEMORANDUM in Support of Application of the Sudden Emergency Doctrine  **- Doc. 38**

**This Notice of Correction was filed in the referenced case this date to correct the PDF documents attached to this notice.  Please see the correct PDF documents to this notice.**

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL ALLEN, et al.    )
            )
      Plaintiffs, )
            )   Case No. 2:06-cv-879-WKW
V.           )
            )
UNITED STATES OF AMERICA  )
            )
      Defendant. )

WALLACE MONTGOMERY, et al.  )
            )
      Plaintiffs, )
            )   Case No. 2:06-cv-880-WKW
V.           )
            )
UNITED STATES OF AMERICA,  )
            )
      Defendant. )

**DEFENDANT UNITED STATES' BRIEF IN SUPPORT OF
APPLICATION OF THE SUDDEN EMERGENCY DOCTRINE**

Comes now the Defendant, United States of America, to brief the applicability of

Alabama's sudden emergency doctrine, pursuant to this Court's order dated January 23, 2008.

**FACTS**

On August 29, 2003, Mrs. Bertha Gordon Moore, then and presently an administrative

assistant for the United States Attorney for the Middle District of Alabama, was driving her

Mercury Mountaineer sport-utility vehicle on Interstate 65 in the northbound lanes, returning

from a law enforcement conference in Perdido Beach.  Exhibit A, Moore Dep. 10:5-19, 14:23-

15:4, 19:2-20:8, Aug. 7, 2007.  Somewhere near Evergreen, Alabama, Mrs. Moore recalls driving

her vehicle at around 65 m.p.h. when she heard a loud bang.  Id. at 32:2-33:10.  She felt the left

rear side of her vehicle suddenly drop, hit her brakes, and at that point lost control of her vehicle. Id. at 48:19-49:8. She has no further recollection of what occurred and remembers briefly waking up in a helicopter that was transporting her to a hospital. Id. at 20:19-21:5.

After the vehicle lost control, it crossed the median and entered the southbound lanes of Interstate 65 where the vehicle collided with the Lincoln Towncar driven by Michael Allen, with front passenger Lori Allen and rear passenger Lou Ellen Allen, and also a Volvo S70 driven by Phyllis Montgomery, with Wallace Montgomery as front passenger.

Subsequent analysis of the left rear tire on Mrs. Moore's vehicle revealed that a bolt or screw had, at some point prior to the collision, fully penetrated the tire-wall and became lodged in the tire on the side facing the wheel well. Exhibit B, Report of Peter Flanner at 2, ¶ 3, No. 1; Exhibit C, Report of Ralph Cunningham at 6, ¶ 1. The treads of the tire were evenly worn, indicating that the tire was not operated in an underdeflated or overdeflated manner. Exhibit C, Report of Ralph Cunningham at 2, ¶¶ 1-2; Exhibit B, Report of Peter Flanner at 2, ¶3, No. 8; Exhibit D, Flanner Dep. 59:13-22, 73:5-15, 84:4-10, Nov. 13, 2007. While Mrs. Moore was driving, the screw or bolt was suddenly ejected, leaving a hole through which all of the remaining air in the tire escaped, completely deflating the tire in a matter of seconds. Exhibit C, Report of Ralph Cunningham at 6-7; Exhibit B, Report of Peter Flanner at 1. To date, only the plaintiffs' accident reconstructionist, Clifford Prosser, has suggested that Mrs. Moore contributed to the cause of this accident by stepping on her brake when her left rear tire suddenly and rapidly deflated on her. Exhibit E, Report of Cliff Prosser at 1, ¶2.

## THE SUDDEN EMERGENCY DOCTRINE IN ALABAMA

Under Alabama law, "a motorist, without fault of [her] own, confronted with a sudden emergency, is not required to exercise the same presence of mind as would a prudent person under more deliberate circumstances." Jefferson County v. Sulzby, 468 So.2d 112, 116 (Ala. 1985), quoting Williams v. Worthington, 386 So.2d 408 (Ala. 1980). While not a defense, per se, to negligence, the "sudden emergency" doctrine "provides a qualified standard of care by which . . . a party's conduct can be measured." Burns v. Martin, 589 So.2d 147, 149 (Ala. 1991). For the doctrine to apply, a party must show that (1) there was a sudden emergency, and (2) the emergency was not the fault of the party invoking the rule. Friedlander v. Hall, 514 So.2d 914, 915 (Ala. 1987).

Alabama continues to recognize the sudden emergency doctrine. See Mitchell v. Johnson, 641 So.2d 238, 239 (Ala. 1994) (rejecting request to abolish the sudden emergency doctrine). Alabama courts have applied the sudden emergency doctrine to cases where a third-party's intervening action of swerving into a defendant's lane caused an accident, see State Farm Mutual Automobile Insurance Co. v. Outlaw, 578 So.2d 1369, 1370 (Ala. Ct. App. 1991), as well as to situations when the driver of a motor vehicle suddenly finds himself rapidly approaching the rear of another vehicle traveling at a much slower speed. Gleichert v. Stephens, 280 So.2d 776, 777 (Ala. 1973).

While research revealed no Alabama cases directly on point (i.e. involving a tire blow out), multiple jurisdictions have persuasively held that a defendant should not be liable when a tire blow-out is the cause of an accident. See, e.g., Huffman v. Mercer, 295 S.W.2d 27, 33 (Mo. 1956) ("If one be precipitated to the left of the road by virtue of circumstances [a blowout] over

which he has no control, one is not negligent.") <u>citing</u> <u>Seligman v. Orth</u>, 236 N.W. 115, 116 (Wis. 1931); <u>Lasseigne v. Kent</u>, 142 So. 867, 868 (La. App. 1932) ("The puncture of an automobile tire by a large spike, causing the car to upset and fatally injuring a guest therein, will, under the evidence set out in the case, be considered an accident, which is a casualty which could not be prevented by ordinary care and diligence.") (citation omitted).

In a very similar case, the Nebraska Supreme Court upheld a verdict that the puncture of a tire and accompanying deflation was the proximate cause of a car swerving off the road and overturning and, therefore, the driver of the car was not liable for the injuries caused. <u>See</u> <u>Bonacci v. Cerra</u>, 279 N.W. 173, 176-77 (Neb. 1938); <u>see also</u> <u>Kelly v. Gagnon</u>, 236 N.W. 160, 164 (Neb. 1931) (holding that a driver who stepped on brake following a puncture of a tire did not act negligently even though the car "swayed and upset," causing the death of a passenger).

In the instant case, Mrs. Bertha Moore was confronted with a sudden emergency when her left rear tire ejected a screw or bolt that had been lodged in it, causing the tire to suddenly and rapidly deflate while she was operating her Mercury Mountaineer (a sports utility vehicle) on a highway at 65 miles per hour. This emergency was through no fault of Mrs. Moore's. There was no indication that the tire was in an unsafe condition. Both the plaintiffs' and the defendant's experts have stated that a tire is not worn to an unsafe condition until the tire tread is at or less than 2/32". Exhibit D, Flanner Dep. 72:6-73:15, Nov. 13, 2007; Exhibit F, Cunningham Dep. 55:1-57:13, Nov. 9, 2007. The tire that suddenly deflated on Mrs. Moore still had between 2/32" and 3/32" of safe, usable tread. Exhibit D, Flanner Dep. at 72:1-73:15, Nov. 13, 2007; Exhibit F, Cunningham Dep. 55:9-57:13, Nov. 9, 2007. Put another way, Mrs. Moore's full tire tread was at 4/32" to 5/32", above the minimum tread necessary to safely operate a vehicle. While the

-4-

plaintiffs' expert, Peter Flanner, opines that the tread on the tire was 80% worn, there was still 20% of usable, safe tread on the tire. Exhibit B, Report of Peter Flanner, at 2, ¶3, No. 8; Exhibit D, Flanner Dep. 71:16-73:15, Nov. 13, 2007. Absent some other indication that the tire was damaged in some way, Mrs. Moore was completely justified in continuing to operate her vehicle with a tire that had 20% of its remaining usable tread.[1]

In addition, both the plaintiffs' and the defendant's tire experts opine that the tread was evenly worn, indicating that the tire was properly aligned and was not over or underinflated during its service life. Exhibit D, Flanner Dep. 59:13-22, 73:5-15, 84:4-10, Nov. 13, 2007; Exhibit C, Report of Ralph Cunningham at 2, ¶¶ 1-2. The location of the screw or bolt that was ejected from the tire was on the side of the tire facing the wheel well and, thus, out of plain view. Id. at 6, ¶¶ 1-2. This means that, unless Mrs. Moore had a lift in her garage, she would never have known that the screw or bolt was lodged in her tire. Moreover, due to the construction of the tire, the screw or bolt would have prevented air from escaping the tire, thus preventing the driver from knowing that something was wrong with the tire in the first place. Id. at 6, ¶ 1; Exhibit B, Report of Peter Flanner at 2, ¶ 1 (suggesting a puncture would result in only gradual loss of pressure). This is supported by the fact that the tire itself exhibited no evidence of having been operated in an overdeflected or underinflated manner.[2] Exhibit D, Flanner Dep. at 59:7-22,

---

[1] To draw an analogy, a full tank of fuel would be at 100% of its capacity for storing fuel. After burning 80% of that fuel, a driver still has 20% of his fuel remaining and does not yet have to refill the tank.

[2] Plaintiffs may suggest that Mrs. Moore's speed was excessive and, therefore, per se negligent under Alabama law, thus preventing the application of the sudden emergency doctrine. To date, however, no expert has testified that Mrs. Moore's speed caused the tire to suddenly deflate or her loss of control of the vehicle following the sudden tire deflation. Moreover, the only sworn evidence of Mrs. Moore's speed comes from Mrs. Moore herself, who testified that

Nov. 13, 2007; Exhibit C, Report of Ralph Cunningham at 2, ¶ 1.

Mrs. Moore, faced with a sudden emergency when her tire suddenly and rapidly deflated

at highway speeds of 65 miles per hour, applied her brakes. Under the circumstances, it was not

negligent to take this action as the move was clearly designed to slow her vehicle down in a

response to the emergency situation. According to the plaintiffs' expert, Clifford Prosser, the act

of stepping on the brake was negligent. Exhibit E, Report of Clifford Prosser at 1, ¶ 2. Given,

however, the sudden emergency Ms. Moore faced, her instinctive reaction of stepping on the

brake, even if not the best course of action, was not negligent. See Crowe v. Crowe, 129 S.E.2d

585, 586 (N.C. 1963) (holding that the defendant's act of stepping on the brakes after a tire

exploded was not negligent where the driver was faced with an emergency and there was no

evidence he was aware of any defect in his tires); see also Pickett v. Cooper, 116 S.E.2d 48, 51

---

she was traveling around 65 miles per hour -- within the posted speed limit -- immediately before
losing control. Exhibit A, Moore Dep. 32:16-33:10.

The only evidence that Mrs. Moore's speed was excessive comes from the Alabama
Uniform Traffic Accident Reports, which estimates her speed at 83 miles per hour. See Exhibits
G and H, Alabama Uniform Traffic Accident Reports. These accident reports, however, contain
erroneous and inaccurate information which indicates their unreliability as well as
inadmissibility. For example, both reports list Michael Allen's insurance carrier as Alfa but it
was, in fact, State Farm. Id. at 1, "Liability Insurance Co." section for Driver Michael Allen.
Furthermore, one version of the report lists Phyllis Montgomery as unemployed while the other
lists her as employed at Georgia Perimeter College. Compare Exhibit G at 2, "Place of
Employment" section for Phyllis Montgomery with same section of Exhibit H at 3. Upon close
examination of the two reports, it is obvious that someone "whited out" the erroneous job
information and then wrote in the college. The reports also inaccurately state that Mrs. Moore
was taken to Evergreen Medical Center. See "Victims" section for Bertha G. Moore on Exhibit
G at 4 and same section on Exhibit H at 2. In fact, she was airlifted by helicopter to a trauma
center in Pensacola, Florida. Neither set of reports has been authenticated nor has a foundational
basis for the calculation of the speed estimate been established. With the glaring inaccuracies of
information, these reports are unreliable, inadmissible, and cannot be the basis upon which
Plaintiffs establish Mrs. Moore's alleged excessive speed.

(Va. 1960) (holding that the sudden emergency doctrine was properly submitted to the fact finder where defendant alleged that a tire blow-out, and not his own negligence, resulted in his vehicle crossing onto the wrong side of the road).

In sum, the sudden emergency doctrine properly applies to the facts of this case. Mrs. Moore did not act in a negligent manner while operating her car on August 29, 2003. Moreover, the tire deflation, and not Mrs. Moore's actions, was the proximate cause of the accident and, consequently, the plaintiffs' injuries. Despite the unfortunate facts of this matter, the United States is not liable for those injuries.

Respectfully submitted this 28th day of January, 2008.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division

PHYLLIS J. PYLES
Director, Torts Branch
Civil Division

GAIL K. JOHNSON
Senior Trial Counsel, Torts Branch
Civil Division

/s/ Conor Kells
CONOR KELLS
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
Post Office Box 888
Benjamin Franklin Station
Washington, DC  20044
Tel: (202) 616-4400
Fax: (202) 616-5200
Attorneys for Defendant United States

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing upon counsel for

Plaintiffs by electronic filing, CM/ECF:

> Annesley H. DeGaris
> Attorney for the Allen Plaintiffs
> Cory, Watson, Crowder & DeGaris, P.C.
> 2131 Magnolia Avenue, Suite 200
> Birmingham, Alabama 35205
>
> J. Callen Sparrow
> Attorney for the Montgomery Plaintiffs
> Heninger Garrison Davis, L.L.C.
> P.O. Box 11310 (35202)
> 2224 1st Avenue North
> Birmingham, Alabama 35203

Dated this 28th day of January, 2008.

/s/ Conor Kells
Trial Attorney, Torts Branch
Civil Division