## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL ALLEN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| V. | ) | Case No. 2:06-cv-879-WKW |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| WALLACE MONTGOMERY, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:06-cv-880-WKW |
| V. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO LIMIT AND EXCLUDE TESTIMONY AND EVIDENCE FROM DEFENDANT'S EXPERT, DR. KEITH WEAVER

Comes now the Defendant, United States of America, to respond to the Allen plaintiffs' motion to exclude testimony and evidence to be presented by the Defendant's expert, Dr. Keith Weaver.

**A.      Timeliness of Dr. Weaver's Reports**

The Allen plaintiffs argue that Dr. Keith Weaver's report regarding his medical examinations and medical treatment received by the Allens is undisputedly untimely.  Allen Plaintiffs' Motion to Exclude Dr. Weaver's Testimony and Evidence ("Plaintiffs' Brief") at 1.

In spite of this statement, however, the Allens do not wish to exclude Dr. Weaver's report of his independent medical examinations of the plaintiffs. They wish only to exclude a supplemental report regarding the reasonableness and necessity of treatments the Allens received following the August 29, 2003, accident forming the basis of this litigation. Id. at 7.

In their brief, the Allen plaintiffs fail to mention that the United States agreed to modify the Court's scheduling order to permit the plaintiffs to designate expert witnesses. See Exhibit A, Joint Motion to Modify the Court's Scheduling Order. This Court agreed, extending the deadline for filing expert designations and the deadline for ending discovery. See Exhibit B, Court's Order Modifying the Scheduling Order. The plaintiffs, however, failed to depose all of the medical experts required to prove their injuries and damages by the termination of discovery. As a result, the United States agreed to informally extend discovery and permit depositions to take place after the discovery deadline. See Exhibit C, Letter from Callen Sparrow, dated December 19, 2007, indicating the agreement to work beyond the discovery deadline for certain depositions; Exhibit D, Letter from Annesley DeGaris, dated December 31, 2007, indicating that there were remaining depositions he needed to complete. This agreement seemed particularly necessary in the case of Dr. Weaver, who had not yet had the opportunity to examine the plaintiffs or issue his reports.

In fact, discovery has not yet ended. The undersigned still has not had an opportunity to finish cross-examining Dr. Leon Campbell, Jr., who provided most of the treatment received by the Allens. See Exhibit E, Letter from Annesley DeGaris, dated Feb. 11, 2008 (noting that he will continue to try and schedule Dr. Campbell's deposition). As recently as February 6, 2008, the undersigned was required to telephonically cross-examine Jeanne Chabot, a chiropractor who

treated Lori Allen. See Exhibit F, Jeanne Chabot's Deposition Notice, for Feb. 6, 2008, at 1:00 p.m., to be conducted telephonically.

Preferably, Dr. Weaver would typically issue his report on the reasonableness and necessity of the treatment the Allens received after all depositions had been completed, so as to have the benefit of the most complete information. The undersigned however, requested that Dr. Weaver issue his report without all of the depositions completed so that the plaintiffs would have the opportunity to review his opinions and depose him.

The plaintiffs' true objection is that Dr. Weaver questions the treatment provided by Dr. Leon Campbell. The plaintiffs have admitted as much by formally requesting that the United States supplement its Admissions in light of Dr. Weaver's determination that the majority, but not all, of the Allens' treatment was reasonable and necessary. See Exhibit G, Letter from Annesley DeGaris, dated Feb. 11, 2008, requesting the United States supplement its responses to plaintiffs' request for admissions in light of Dr. Weaver's "new report"; Exhibit H, Dr. Weaver's Supplemental Report.

The United States' response to the plaintiffs' contentions regarding Dr. Weaver's evaluation of Dr. Campbell is several fold. First, the Allens have been on notice from as early as November 14, 2007, that Dr. Campbell's treatment was going to be challenged. See Exhibit I, Leon Campbell Deposition, 125:10-140:12, Nov. 14, 2007 (cross-examining Dr. Campbell's qualifications and procedures for performing alleged nerve-blocks). Second, Dr. Weaver's designation makes clear that he was retained to offer testimony about the "plaintiffs' injuries, the causes of those injuries, their medical records and care following the accident, and their medical expenses." See Plaintiffs' Brief, Exhibit A at 1. This clearly and unequivocally states that Dr.

Weaver was retained to offer testimony about their medical records and the care they received. Id. Lastly, and most important, since discovery regarding the plaintiffs' treatment following the accident has not yet been completed, Dr. Weaver's report regarding the reasonableness and necessity of the treatment they received is, if anything, pre-mature, as he has not had the benefit of full explanation of all of their treatment.

The plaintiffs contend that Dr. Weaver's opinions could have been forwarded to them as early as October 18, 2007. Plaintiffs' Brief at 2. This contention, however, is not based on the realities of the conduct or discovery in this matter. Dr. Weaver, as of that date, had not yet physically examined the plaintiffs, nor had he had the benefit of additional discovery that explained the Allens' medical records. This clearly constitutes a "substantial justification" for not disclosing the information sooner, particularly since discovery extended, by agreement, well beyond the December 18, 2007, deadline and continues to extend even two weeks prior trial. See Exhibits C, D, and F.

Furthermore, the plaintiffs have suffered no harm from Dr. Weaver's supplemental report on the reasonableness and necessity of their treatment. As the Eleventh Circuit has held, and the plaintiffs note in their motion, "[a]ny party that 'without substantial justification' fails to disclose this information is not permitted to use the evidence at trial 'unless such failure is harmless.'" Prieto v. Malgor, 361 F.3d 1313, 1318 (11th Cir. 2004). As of the filing of their motion, the plaintiffs are scheduled to depose Dr. Weaver regarding his opinions on Thursday, February 14, 2008, at 2:00 p.m. See Exhibit J, Notice of Deposition of Dr. Keith Weaver. Thus, in addition to having the benefit of disclosure prior to trial, they will have the full benefit of discovering how his opinions were reached and will suffer no prejudice at trial. The same cannot be said for Dr.

-4-

Weaver, who will be deposed before full discovery of the plaintiffs' treatment has been completed.

By their motion, the plaintiffs have requested that Dr. Weaver's supplemental report be excluded while at the same time requesting that the United States admit to the reasonableness and necessity of much of their treatment based on that same report. See Exhibit G. They cannot have their cake and eat it, too. The delay in providing the report was caused by the failure to complete full discovery, and the plaintiffs will suffer no harm whatsoever since they have been apprised of the report and are scheduled to depose Dr. Weaver in two days' time.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

For the foregoing reasons, the plaintiffs' motion to exclude testimony and evidence based on Dr. Weaver's new report is not well-taken.  The motion should be denied.

Respectfully submitted this 12th day of February, 2008.

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
Civil Division

PHYLLIS J. PYLES
Director, Torts Branch
Civil Division

GAIL K. JOHNSON
Senior Trial Counsel, Torts Branch
Civil Division

/s/ Conor Kells
CONOR KELLS
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
Post Office Box 888
Benjamin Franklin Station
Washington, DC  20044
Tel: (202) 616-4400
Fax: (202) 616-5200
Attorneys for Defendant United States

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing upon counsel for

Plaintiffs by electronic filing, CM/ECF:

> Annesley H. DeGaris
> Attorney for the Allen Plaintiffs
> Cory, Watson, Crowder & DeGaris, P.C.
> 2131 Magnolia Avenue, Suite 200
> Birmingham, Alabama 35205
>
> J. Callen Sparrow
> Attorney for the Montgomery Plaintiffs
> Heninger Garrison Davis, L.L.C.
> P.O. Box 11310 (35202)
> 2224 1st Avenue North
> Birmingham, Alabama 35203

Dated this 12th day of February, 2008.

> /s/ Conor Kells
> Trial Attorney, Torts Branch
> Civil Division

# Exhibit A

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL P. ALLEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-cv-879-WKW |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| WALLACE MONTGOMERY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-cv-880-WKW |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT MOTION TO MODIFY THE COURT'S SCHEDULING ORDER

Comes now the United States, joined by the Plaintiffs Michael, Lou Ellen, and

Lorie Allen and Wallace and Phyllis Montgomery, to move this Court to modify its

scheduling order. In support thereof, the parties aver the following:

1. The Court's scheduling order in the above-referenced cases, which have been

consolidated for discovery, required the Plaintiffs to designate their expert witnesses and

reports by July 9, 2007.

2. Pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), the Defendant has 30

days to rebut the Plaintiffs' designations. The Court's scheduling order, therefore, provided that the United States would designate its experts 30 days after the Plaintiffs, on August 8, 2007.

3. Prior to the Plaintiffs' designation deadline, July 9, 2007, the Plaintiffs requested, and the United States agreed to provide, additional time to designate their expert witnesses.

4. As a result, the United States has not yet received the Plaintiffs' expert designations and is not in a position to rebut the Plaintiffs' designations as of August 8, 2007.

5. The parties hereby jointly request that the Court's scheduling order be amended to provide that the Plaintiffs will designate their expert witnesses by September 18, 2007, and the Defendant will respond thirty days thereafter with its own designations on October 18, 2007.

6. The parties further request that the deadline for completing discovery be extended to December 18, 2007.

7. Modifying the deadline for designations and completion of discovery will not alter the date set for trial, nor will it affect the parties' obligation to conduct a good-faith settlement conference on or before November 30, 2007.

//

//

2

Respectfully submitted,


/s/ Conor Kells
CONOR KELLS
GAIL K. JOHNSON
Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, D.C.  20044
(202) 616-4273
(202) 616-5200 (FAX)

Attorneys for Defendant
UNITED STATES OF AMERICA


/s/ Annesley H. DeGaris
ANNESLEY H. DEGARIS
Cory, Watson, Crowder, & DeGaris, P.C.
2131 Magnolia Avenue
Birmingham, AL 35205
(205) 328-2200
(205) 328-7896 (FAX)

Attorney for The Allen Plaintiffs


/s/ J. Callen Sparrow
J. CALLEN SPARROW
Heninger Garrison Davis, L.L.C.
2221 First Avenue North
Birmingham, AL 35203
(205) 326-3336
(205) 326-3332 (FAX)

Attorney for The Montgomery Plaintiffs

3

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date served a copy of the foregoing Joint Motion to

Amend the Court's Scheduling Order upon plaintiffs' attorneys by electronic filing and

CM/ECF on:

> Annesley H. DeGaris, Esq.
> Cory, Watson, Crowder & DeGaris, P.C.
> 2131 Magnolia Avenue, Suite 200
> Birmingham, AL 35205
>
> J. Callen Sparrow, Esq.
> Heninger Garrison Davis, L.L.C.
> 2221 First Avenue North
> Birmingham, AL 35203

Dated this 10th day of August, 2007.

     /s Conor Kells     
CONOR KELLS

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL P. ALLEN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-879-WKW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

-------------------------------------------------

| | | |
|---|---|---|
| WALLACE MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-880-WKW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Upon consideration of the parties Joint Motions to Modify the Court's Scheduling Order (Docs. # 17 & 19), it is ORDERED that the motions are GRANTED. The scheduling orders in these cases (Docs. ## 12 & 14 ) are AMENDED as follows:

A.     The discovery deadline in Section 7 of the Uniform Scheduling Order is extended **from October 16, 2007, to December 18, 2007.**

B.     The plaintiffs' deadline for designating their expert witnesses in Section 8 of the Uniform Scheduling Order is extended **from July 9, 2007, to September 18, 2007.**

C.      The defendant's deadline for designating its expert witnesses in Section 8 of the

Uniform Scheduling Order is extended **from August 8, 2007, to October 18, 2007.**

DONE this 28th day of August, 2007.

                                    /s/   W.  Keith Watkins
                            UNITED STATES DISTRICT JUDGE

# Exhibit C



HENINGER GARRISON DAVIS, LLC

2224 1ST AVENUE NORTH
BIRMINGHAM, AL . 35203
P.O. BOX 11310
BIRMINGHAM, AL . 35202
PHONE: (205) 326-3336
(800) 241-9779
FAX: (205) 326-3332
WWW.HGDLAWFIRM.COM

J. Callen Sparrow
Direct Dial: (205)327-9118
E-mail: jcsparrow@hgdlawfirm.com

December 19, 2007

<u>VIA FACSIMILE</u> (202)616-5200

Conor Kells, Esquire
U.S. Department of Justice
Post Office Box 888
Benjamin Franklin Station
Washington, D.C. 20044

Re: ***Montgomery, et al. v. United States,*** Civil Action No. 06-cv-880-WKW (M.D. Ala)

Dear Conor:

This will follow our several conversations regarding our agreement to work beyond the discovery deadline in order to get certain depositions, etc. It is my understanding that you have agreed to the taking of Dr. Moore's deposition. Also, if necessary, we can depose whomever is necessary in order to prove any of the records and/or bills from the Montgomery's first treatment at Evergreen as well as anyone else necessary to prove the subrogation interest with BlueCross BlueShield of Georgia. In that regard, as soon as I receive documentation from BlueCross BlueShield of Georgia I will provide it to you.

Further, if you obtain a medical evaluation of Mr. Montgomery, I reserve the right to take that deposition as well.

If I have misstated our agreement in any way, please let me know.

With kindest regards, I remain,

Sincerely yours,

J. Callen Sparrow

JCS/lcm
cc:    Annesley H. DeGaris, Esquire

**Exhibit D**



Annesley H. DeGaris
(205) 271-7104
(205) 324-7896 (fax)
adegaris@cwcd.com

December 31, 2007

_VIA FACSIMILE:  (202) 616-5200_

Conor Kells, Esquire
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, DC  20044

RE:    _Allen v. United States_, Civil Action No.: 06-cv-879-WKW
         _Montgomery v. United States_, Civil Action No.: 06-cv-880-WKW

Dear Conor:

I am writing you to follow up on several conversations we had before and following my clients' depositions.  In no particular order these matters are summarized below:

1.    **Blue Cross Blue Shield Subrogation.**  Following my clients' depositions, I presented to you Blue Cross Blue Shield's most current account of their subrogation interest.  Are you satisfied with these documents that they may be utilized in trial as setting forth the subrogation due?

2.    **Med Pay Subrogation.**  We are confirming any outstanding med pay subrogation being asserted by Mike's insurance carrier.  I will check on the subrogation for each of the Allens.

3.    **Lost Wage Information.**  We are not asserting any lost wages on behalf of Mike Allen.  I am enclosing the lost wage information statement that was prepared by the accounting firm of Warren Averett for Lou Ellen and Lorie.  You should already have these documents.  It is not likely that we will update this lost wage information before trial.

4.    **Medical Depositions.**  It is my understanding that you will let me know if there are any medical depositions that need to be taken prior to mediation.  In the event we are unable to reach a resolution at the mediation, it is now likely that the following medical depositions will need to be taken, completed or rescheduled:

(a)    Dr. Campbell, the completion of his deposition dealing with his treatment of Lou Ellen Allen;

Conor Kells, Esquire
31 December 2007
Page Two

    (b)    Dr. Cain, dealing with his treatment of Mike Allen (we are attempting to reschedule now);

    (c)    Dr. Chabot, chiropractor, dealing with the chiropractic treatment of Lori Allen (we are attempting to schedule now);

    (d)    An emergency room physician from Baptist Medical Center who will hopefully be able to testify as to the treatment and billing of all three Allens; and

    (e)    As to any miscellaneous billing that I seek to prove up, this will be done either through Dr. Cain or Dr. Campbell.

    5.    Photographs. As you are aware, there is a fairly revealing photograph of Lorie Allen showing the seatbelt bruising to her breast resulting from the accident. I would like to make a request that we agree that following litigation that those photos be returned or destroyed. Thank you for your agreement in handling this rather sensitive issue.

    6.    Out-of-Pocket Expenses. I may not have yet provided you with an up to date out-of-pocket expenses on behalf of the Allens. I am in the process of updating this matter and will provide it to you at or before the mediation.

Yours sincerely,

Annesley H. DeGaris
(ELECTRONICALLY SIGNED TO AVOID DELAY)

AHD/jws
Enclosures
cc:    Gail K. Johnson, Esquire (via fax 202-616-5200)

**Exhibit E**



Annesley H. DeGaris
(205) 271-7104
(205) 324-7896 (fax)
adegaris@cwcd.com

February 11, 2008

**_FACSIMILE:  (202) 616-5200_**

Conor Kells, Esquire
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, DC  20044

RE:    *Allen v. United States*, Civil Action No.: 06-cv-879-WKW
         *Montgomery v. United States*, Civil Action No.: 06-cv-880-WKW

Dear Conor:

I am writing in response to your letter of February 7, 2008.  As you are aware, I have repeatedly made requests for Dr. Weaver's x-rays, a deposition date and a copy of this "new" report without waiving any relevant objections I might have.  I still do not have the x-rays in question.  Also, I cannot agree to a new expert report filed just over two weeks prior to trial.

As far as the deposition of Dr. Campbell, I have contacted Dr. Campbell's office to arrange for you to complete your cross-examination.  When I have information regarding this, I will contact you.

Lastly, Callen and I will both work with you in putting together a joint exhibit binder.  Perhaps we can talk early later this week about how to proceed in regards to this matter.

Yours sincerely,

Annesley H. DeGaris

AHD/jws
cc:    Callen Sparrow (via fax 205-326-3332)
        Gail Johnson (via fax 202-616-5200)

**Exhibit F**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

MICHAEL P. ALLEN, et al.,      )
                            )

      Plaintiffs,      )
                            )

vs.                       )   CASE No.: 2:06-cv-00879-WKW-WC
                            )

UNITED STATES OF AMERICA,      )
                            )

      Defendant.      )
                            )


WALLACE MONTGOMERY, et al.,      )
                            )

      Plaintiffs,      )
                            )

vs.                       )   CASE NO.: 2:06-cv-00880-WKW-WC
                            )

UNITED STATES OF AMERICA,      )
                            )

      Defendant.      )


## NOTICE OF TAKING TELEPHONIC DEPOSITION

TO:               Conor Kells, Esquire
                     Gail K. Johnson, Esquire
                     U.S. Department of Justice
                     P.O. Box 888
                     Benjamin Franklin Station
                     Washington, DC  20044


DEPONENT:        Dr. Jeanne Chabot
DATE:             February 6, 2008
TIME:             1:00 P.M.
LOCATION:         2116 Rocky Ridge Road
                     Hoover, Alabama 35216
                     (205) 822-2177

Please take notice that Plaintiff(s) will take the telephonic deposition of Dr. Jeanne Chabot upon oral examination for the purpose of discovery or use as evidence in this action in accordance with the Federal Rules of Civil Procedure. Said deposition is to be held on the date and time set out herein, and shall be taken before a certified court reporter that is authorized to administer oath under the laws of the State of Alabama. You are invited to attend and cross-examine.

Annesley H. DeGaris (ASB-9182-A63A)
Attorney for the Allen Plaintiffs
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, Alabama 35205
Telephone: 205-328-2200
Facsimile: 205-324-7896
E-mail: adegaris@cwcd.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of January, 2008, I served a copy of the foregoing pleading on all counsel of record Via Facsimile, E-Mail, and by placing a copy of same in the United States Mail, postage prepaid and properly address as follows:

Conor Kells, Esquire
Gail K. Johnson, Esquire
United States Department of Justice
Torts Branch, Civil Division
Post Office Box 888
Benjamin Franklin Station
Washington, DC 20004

J. Callen Sparrow, Esquire
Heninger Garrison Davis, L.L.C.
2224 1st Avenue North
Birmingham, AL 35203

Annesley H. DeGaris

cc:    Jodi DuBose
       Freedom Court Reporting
       367 Valley Avenue
       Birmingham, AL 35209

# Exhibit G



Annesley H. DeGaris
(205) 271-7104
(205) 324-7896 (fax)
adegaris@cwcd.com

February 11, 2008

**_FACSIMILE: (202) 616-5200_**

Conor Kells, Esquire
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, DC 20044

      RE:    *Allen v. United States*, Civil Action No.: 06-cv-879-WKW
                  *Montgomery v. United States*, Civil Action No.: 06-cv-880-WKW

Dear Conor:

      In light of Dr. Weaver's new report which was delivered to me on February 8, 2008, and to which I reserve all objections, I am requesting that you please supplement your responses to our Request for Admissions in regard to Mike Allen, Lou Ellen and Lori Allen. Specifically, Request for Admission Nos. 11, 12, 13, 14, 15, and 16.

      In our conversation this morning you also indicated that you could be available for your cross-examination of Dr. Campbell on Thursday morning or Friday any time. I will do my best to get a commitment from him as quickly as possible to assist you in making your travel plans.

      Lastly, I will meet with Callen to try and set up a time at the end of the week that we can all work together in putting together a joint exhibit binder.

            Yours sincerely,

            Annesley H. DeGaris
            (ELECTRONICALLY SIGNED TO AVOID DELAY)

AHD/jws
cc:    Callen Sparrow (via fax 205-326-3332)
       Gail Johnson (via fax 202-616-5200)

**Exhibit H**

The following medical records were reviewed and taken into consideration for additional opinions in the matter of Michael P. Allen, Lou Ellen Allen and Lorie Suzanne Allen v United States: (1) Butler County Emergency Medical Services, LLC, (2) Evergreen Medical Center - Dr. Maria R. Cumagun and Dr. Steven Teplick (3) Baptist Medical Center-Montclair - Dr. Gregory W. Ayers, (4) The Downtown Clinic - Dr. Leon Campbell, Jr., (5) The Radiology Clinic, LLC, (6) Birmingham Radiology Group, (7) Women's Care Specialists, PC - Dr. Jennifer Maddox, (8) Chabot Chiropractic Clinic - Dr. Jeanne Chabot, (9) Physiotherapy Associates of Alabama, PC, (10) Conecuh County Emergency Medical Services, LLC, (11) The Kirklin Clinic - Dr. K. David Moore, (12) Michael Laser Vision - Alabama Eye & Cataract Center, (13) Alabama Sports Medicine and Orthopaedic Center - Dr. E. Lyle Cain, Jr., (14) Highland Diagnostic Center, (15) HealthSouth Medical Center, (16) Brookwood Medical Center - Dr. Charles R. Shumate and (17) Anesthesiology & Pain Medicine - Dr. Lucy Chapman.

Each of these records was entirely legible except for those of Dr. Leon Campbell. The only typed documents contained in his records were letters to Mr. Annesley H. DeGaris. All others were hand written and contained numerous abbreviations, sketches, circles, arrows and CPT codes. It is likely that typed records were not included for review since many of the opinions contained in the narrative summaries to Mr. DeGaris are not identified in the hand written office records.

The services rendered by the practitioners identified by number in the first paragraph: 1, 2, 3, 5, 6, 8, 9, 10, 11, 14, 15, and 17 were medically reasonable and necessary for the diagnosis and treatment of the Allen's accidental injuries.

The services rendered by (4) Dr. Leon Campbell are concerning not only for medical necessity but potentially for patient safety as well. Dr. Campbell's specialty is not identified on his letterhead or with the Alabama Board of Medical Examiners. The poor handwriting compromises the full understanding of these records. Various abbreviations for nerve blocks are the extent of procedure documentation including ICNB - intercostal nerve block, ONB - occipital nerve block, TFB - thoracic facet block, and PNB - peripheral nerve block. It would be highly unusual for a thoracic facet block to be performed without the aid of a fluoroscope (live x-ray). It would be highly unusual for an intercostal nerve block to be performed anywhere but in a general hospital by an anesthesiologist where resuscitation measures for inadvertent intravascular injection or pneumothorax are readily available. More likely than not, Dr. Campbell actually performed trigger point and subacromial bursal injections in an office setting.

Many of the diagnoses listed in the letters to Mr. DeGaris are not identified in Campbell's hand written notes or contained in the records of practitioners listed in the first paragraph. Specifically for Mr. Michael Allen these include: (A) the diagnoses of traumatic brain injury and loss of consciousness, (B) tinnitus, and (C) cardiac contusion. Specifically for Mrs. Lou Ellen Allen these include: (A) traumatic brain injury and loss of consciousness, (B) liver contusion, (C) diaphragmatic hernia -even though not

Page 2

demonstrated on a 9/8/03 chest x-ray or a 2/3/04 CT chest, (D) pulmonary contusions with a bloody pleural effusion - even though this same 9/8/03 chest x-ray noted left costophrenic blunting "suggesting a small pleural effusion,…, no pneumonia, *contusion*, or mass lesion is seen", (E) cardiac contusion, and (F) post-traumatic stress disorder. Specifically for Miss Lorie Allen this included: traumatic brain injury with loss of consciousness.

The services rendered by (7) Women's Care Specialist, PC - Dr. Jennifer Maddox to Lori Allen was in part due to the results of the 8/29/03 car accident. They were reasonable and medically necessary. Ms. Allen was seen on 9/10/03 to follow up on an abnormal test and she asked Dr. Maddox to check her bruised right breast.

The services rendered to Mr. Michael Allen by (12) Michael Laser Vision - Alabama Eye & Cataract Center were not medically necessary for conditions resulting from the 8/29/03 car accident.

The services rendered to Mr. Michael Allen by (13) Alabama Sports Medicine & Orthopaedic Center - Dr. E. Lyle Cain, Jr., although medically necessary, may not be entirely related to the conditions resulting from the 8/29/03 car accident. The following diagnoses are clearly related: proximal right fibular fracture and chondral lesions of the right patella. Diagnoses that are degenerative conditions that are not clearly associated with this accident are: right medial meniscal tear, chondromalacia of the weight-bearing surface of the right medial femoral condyle, degenerative left acomio-clavicular joint with shoulder impingment, and degenerative right acromio-clavicular joint with shoulder impingment. On 2/11/04 Dr. Cain's noted "During the past 4 weeks the patient has experienced knee locking and catching". These are symptoms of meniscal pathology that were noted 5 1/2 months post injury. The 10/29/03 MRI scan noted "Signal abnormality is present within the medial meniscus which is mostly *degenerative*". Chondromalacia of the weight bearing portion of the medial femoral condyle is a common finding in a 55 year old man with degenerative meniscal pathology. Acromio-clavicular arthritis with impingment is also a common finding someone 55 years old. The 2/3/04 MRI of the right shoulder noted "mild proliferative disease of the AC joint producing local mass effect on the supraspinatus tendon. No rotator cuff tear". The 2/3/04 MRI of the left shoulder showed "AC joint degenerative disease ....similar in degree to the right side. No rotator cuff tear". On 9/16/03 Dr. K. David Moore noted a proximal fibular fracture and that Mr. Allen's stated that his "pain on the posterolateral aspect of his knee which was sharp in nature" had resolved. Dr. Moore made no mention of mechanical symptoms - i.e. catching, locking, giving way - with the right knee, no mention of right shoulder pain and no mention of left shoulder pain.

The services rendered to Lou Ellen Allen by (16) Brookwood Medical Center - Dr. Charles R. Shumate, although medically necessary to treat an abdominal hernia, are not clearly related to the trauma of 8/29/03. Dr. Shumate's records of 6/22/05 and 6/23/05 do not state a cause for the hernia. Dr. Leon Campbell's records do mention a 7+ centimeter

Page 3

mass (larger in diameter than a tennis ball) on 5/27/05 with a diagram and the comment "same as 10-29-03 exam, needs surgical evaluation & management". The evaluations between these two dates - 12/3/03, 2/5/04, 4/1/04, 5/5/04, 10/8/04, 1/31/05 each have 'supple' checked as present, 'NT' (? non-tender) checked as present, and hand written 'soft'. There is no mention of this large mass.

The charges for services rendered by Dr. Campbell are unusually high. As an example, the Patient Ledger for Lou Ellen Allen printed on 8/16/04, contain the total charges for 9/8/03 as $2850, 9/24/03 as $2270, and 10/8/03 as $2174. There may be facility fees incorporated into these examples to explain the high charges. Most of the charges were for injections. Lou Ellen Allen's 9/8/03 charges included: 64470, a CPT code for a cervical or thoracic facet block ($425); 64405, a CPT code for a greater occipital nerve block ($250), 64420, a CPT code for a *single* intercostal nerve block ($1300), 64418, a CPT code for a suprascapular nerve block ($310). Despite this being an unusual number/ type of injections, the coding for these services does not seem accurate. For example, the CPT for an *intercostal nerve, single* is 64420. CPT for *intercostal nerves, multiple, regional block* is 64421. If there is consistency in Dr. Campbell's billing, using the 12/3/03 charge of $325 for code 64420, the 9/8/03 charge of $1300 ($325 x 4) is actually for *four* blocks. The proper code should have been 64421. Icon, an anesthesia billing company for the 18 anesthesiologists at BMC Princeton, Trinity, and BMC Shelby have charges of $385 for 64420 and $400 for 64421. This entire group of board certified anesthiologists, seven of whom also have pain board certification, have performed a total of **four** intercostal nerve blocks (CPT 64420), **three** (CPT 64421) and **zero** suprascapular nerve (64418) blocks for this same year. Dr. Campbell has performed a similar number of intercostals nerve blocks just on Lou Ellen Allen.

# Exhibit I

# FREEDOM COURT REPORTING

Page 125

1    Q.  Could you describe what that
2  means?
3    A.  Well, that means assisting
4  patients with the diagnosis and
5  management of pain problems.  Could be
6  done with oral medication, could be
7  done by referral for physical therapy,
8  referral for surgery, could be done by
9  injections.
10    Q.  Are you certified as a pain
11  medicine doctor, pain medication
12  administering doctor?
13    A.  Uh-uh.
14    Q.  Have you ever testified in
15  court before?
16    A.  No.
17    Q.  Have you ever been deposed
18  before?
19    A.  I have, yes.
20    Q.  How many times?
21    A.  Maybe twice.
22    Q.  Who is your current medical
23  malpractice insurer?

Page 126

1    A.  No one.
2    Q.  Are you self-insured?
3    A.  Right.
4    Q.  Could you describe your
5  medical record keeping process for me?
6  Do you put a chart number on each and
7  every medical record that you have?
8    A.  We put the patient's name on
9  the chart.
10    Q.  Do you have like a reference
11  number for each visit, so that if a
12  document gets misplaced, it can be
13  replaced right back in with the chart
14  number or anything along those lines?
15    A.  No.  Everything is dated.
16  It's done by date.  And for each visit,
17  there are two pages.  So if there's not
18  two pages, you know, it kind of calls a
19  question.
20    Q.  What I'm getting at is:  If
21  you had two patients named Michael
22  Allen and you had a misplaced document
23  and you went to try to replace it back

Page 127

1  into the file, is there any check or
2  balance or way to track it back based
3  on a reference number or code?
4    A.  Social Security number, date
5  of birth, address, phone numbers,
6  things like that.
7    Q.  Do you keep your records
8  computerized?
9    A.  No.  Well, only to the extent
10  of the medication list.  The medication
11  lists are computerized.
12    Q.  When a patient comes in, do
13  you put down in your medical record all
14  of the complaints that they have?
15    A.  All of the relevant
16  complaints, yeah.
17    Q.  What would be an irrelevant
18  complaint?
19    A.  Pardon?
20    Q.  What would be an irrelevant
21  complaint?
22    A.  It gets back to the kind of
23  thing I was telling you before.  That I

Page 128

1  don't have somebody in there, you know,
2  as a stenographer getting every word
3  and every pause and that sort of thing.
4  I have to put down as much as I have
5  time to put down and detail I have time
6  to put down and try to stick to the
7  important stuff.
8    Q.  Do you keep any records of
9  noncomplaints as in complaints of pain
10  in the ankle, but not in the knee?
11    A.  Could you repeat that
12  question?
13    MR. DeGARIS:  Object to the
14  form.
15    Q.  (BY MR. KELLS:)  Do you ever
16  mark down in your records
17  noncomplaints, you know, if they
18  complain of leg pain, but it's ankle,
19  not knee, for example?
20    MR. DeGARIS:  Object to the
21  form.
22    A.  I don't think I understand the
23  question.  You mean like I put down

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

Page 129

1  there's no -- for example, abdominally,
2  it's pretty common to put down no
3  peritoneal signs. Is that what you
4  mean?
5    Q. (BY MR. KELLS:) If a patient
6  comes in complaining about one thing,
7  but not complaining of something else,
8  do you ever mark down the fact that
9  they aren't complaining about something
10  that could be related to what they are
11  complaining about?
12    A. Yeah. Yes. Yeah.
13    Q. Do you keep in your records a
14  list of all of the procedures that you
15  perform during a patient visit?
16    A. Yes.
17    Q. Do you keep a record of all
18  diagnoses that you make during that
19  visit?
20    A. Yes.
21    Q. Do you list the reasons for
22  making those diagnoses in your records?
23    A. It's not really practical to

Page 130

1  do that. A diagnosis is made as kind
2  of a gestalt summary and processing of
3  data, which is history and physical
4  examination, laboratory data, EKG,
5  whatever data, chest x-ray, and so
6  forth. To put down that process of
7  putting those things together and then
8  distilling it into a diagnosis would be
9  onerous and unnecessary.
10    Q. So you don't necessarily mark
11  the reason? You just let the symptoms
12  and the tests speak for themselves and
13  you give your conclusion as the
14  diagnosis?
15    A. Yes. Yeah.
16    Q. Do you keep in your records
17  the recommended course of treatment for
18  whatever diagnosis you make?
19    A. Yes.
20    Q. In your practice, do you make
21  referrals to neurologists?
22    A. Yes.
23    Q. Do you make referrals to

Page 131

1  orthopedists?
2    A. Yes.
3    Q. Do you make referrals to
4  thoracic surgeons?
5    A. Well, yes. How do you define
6  a thoracic surgeon? Well, just say
7  yes, because I refer patients freely to
8  specialists and subspecialists.
9    Q. Do you ever make referrals to
10  anesthesiologists?
11    A. Occasionally, yeah.
12    Q. Do you make referrals to
13  psychologists or psychiatrists?
14    A. Yes.
15    Q. I noticed that in your records
16  when we were going through them and
17  also in the notes that were marked
18  previously as an exhibit and these were
19  the two-page handwritten notes that you
20  used in connection with the letter. I
21  forget which exhibit it was marked as.
22    A. Those aren't really part of
23  the chart.

Page 132

1    Q. I realize that.
2    A. I was just trying to instill
3  something down for a report.
4    Q. I realize that. But the only
5  reason I bring it up is that I noticed
6  in the records that we reviewed for
7  Michael Allen that there are a number
8  of -- Exhibit 9, for the record, that's
9  the handwritten notes.
10    A. I've got my copy here. All
11  right. Yeah.
12    Q. Looking at some of the records
13  that we have and looking at some of the
14  notes over here, you made reference to
15  some injections that you made at
16  numerous points. I understand these
17  are nerve block injections.
18    A. Some are.
19    Q. For example, an INCB be the
20  intercostal nerve block?
21    A. That's exactly right.
22    Q. I understand that's an
23  injection to ease pain by blocking the

33 (Pages 129 to 132)

## FREEDOM COURT REPORTING

Page 133

1  nerve off?
2     A.  That's right.
3     Q.  For example, a TFB, is that a
4  thoracic facet block?
5     A.  Yeah.
6     Q.  Is that also a type of nerve
7  block?
8     A.  Yeah.  It's a dual purpose
9  injection.  It's a little joint and it
10  also has a nerve.  So you're injecting
11  near the joint and you're injecting to
12  block the nerve, yeah.
13     Q.  Things like an ONB is an
14  occipital nerve block?
15     A.  That's correct.
16     Q.  It's also another type of
17  nerve block injection?
18     A.  Uh-huh.
19     Q.  One of the other ones, I think
20  there was an ANB, is that an ancillary
21  nerve block?
22     A.  Yeah.
23     Q.  That's another type of

Page 134

1  injection that you would make?
2     A.  Uh-huh.
3     Q.  I noticed in your records
4  there are code numbers same as they are
5  in Exhibit 9.  Just for reference
6  purposes, are those numbers taken from
7  the current procedural terminology put
8  out by the American Medical
9  Association?
10     A.  Could you point to the numbers
11  you're referring to?
12     Q.  For example, on Michael
13  Allen's record from September 8th?
14     A.  You're talking about ledger
15  now.  You're talking about this sheet,
16  just to clarify?
17     Q.  That ledger.  And also in your
18  records, for example, on September
19  24th, 2003 --
20     A.  Okay.
21     Q.  -- you have two parentheses,
22  20605.  I believe CP is chest pain?
23     A.  Yeah.

Page 135

1     Q.  Does that number refer to a
2  code in the current procedural
3  terminology as to the type of
4  injection?
5     A.  Yes, sir.
6     Q.  And is that taken from the
7  current procedural terminology put out
8  by the American Medical Association?
9     A.  That's what we use, yeah.
10     Q.  For example, 20605 would be an
11  injection into an intermediate joint or
12  bursa, for example, the
13  temporomandibular, the
14  acromioclavicular, wrist, elbow or
15  ankle, et cetera, something along those
16  lines?
17     A.  Yeah.
18     Q.  What are your procedures for
19  administering these nerve blocks and
20  injections?
21     A.  What are the procedures?
22     Q.  Yeah.
23     A.  Well, first, to identify the

Page 136

1  problem and then based on the
2  perception of the problem, the
3  intensity of the problem is to mix a
4  cocktail of drugs aimed at relieving
5  the pain.
6     Q.  Is that the whole procedure?
7     A.  Well, we mix it and then we
8  administer the injection.
9     Q.  Okay.
10     A.  And we do that with a needle
11  and a syringe.
12     Q.  Okay.  Have you received any
13  kind of specialized training for
14  administering nerve blocks and
15  injections, such as the ones you have
16  administered to Michael, Lou Ellen, and
17  Laurie Allen?
18     A.  I have.  On-the-job training,
19  so to speak, like CME.  We're primarily
20  working with another doctor who did
21  these things that trained me.
22     Q.  What kind of doctor was the
23  doctor you worked with?

34  (Pages 133 to 136)

# FREEDOM COURT REPORTING

Page 137

1    A.  He was a -- he was another
2  general practice internal medicine type
3  doctor.
4    Q.  Do you use any safety
5  precautions when administering these
6  injections?
7    A.  Yeah.
8    Q.  What kind of safety
9  precautions do you use?
10    A.  Well, sterility is a key part
11  of the process.  Sterility is not
12  really a process.  It's really what's
13  called a septic technique.  In other
14  words, we don't want to introduce any
15  infective organisms.  You know, use
16  sterile, branding needles, disposal
17  needles, syringes, that sort of thing.
18  We prep the site.  We prep it with
19  Betadine and alcohol and give it time
20  to clean the area before we inject.
21    Q.  Do you inform your patients
22  about any of the attendant risks in
23  administering a nerve block?

Page 138

1    A.  Yeah.  We -- yeah.
2    Q.  What sorts of risks do you
3  warn them about?
4    A.  Depends on where the block is
5  given, what the risks are.  There's
6  always a risk of bleeding, for example.
7  There is a risk of infection.  There is
8  a risk of -- if a -- for example, in
9  terms of an intercostal block, there is
10  a risk of puncturing a lung and causing
11  a pneumothorax, that sort of thing.  Is
12  that what you're --
13    Q.  That's actually a perfect
14  example.  You warn them of the risks
15  that can occur?
16    A.  Yes.
17    Q.  Do you get them to sign
18  informed consent forms before you
19  perform the procedure?
20    A.  No.
21    Q.  For example, when you perform
22  an intercostal nerve block --
23    A.  Uh-huh.

Page 139

1    Q.  -- because of the risks of a
2  pneumothorax or a lung collapse, do you
3  keep chest tubes nearby to incubate?
4    A.  We do have, yes.
5    Q.  When you perform the
6  injection, do you use any kind of
7  fluoroscopy?
8    A.  No.
9    Q.  Do you use any kind of x-rays
10  whatsoever to help guide the needles so
11  you know where you're injecting?
12    A.  No.
13    Q.  Do you use any mechanism
14  whatsoever to help you guide the needle
15  into the proper location for the
16  injection?
17    A.  Just knowing the anatomy.
18  Understanding the anatomy.  Some of the
19  things you'll do, for example, when you
20  do an intercostal nerve block is you
21  always use the shortest needle possible
22  so that you don't -- you greatly reduce
23  or minimize or alleviate the

Page 140

1  possibility of puncturing the lung.
2    Q.  Do you administer
3  intravenous -- anything during the
4  intercostal nerve block?
5    A.  Do you mean anesthesia?
6    Q.  Any kind of IV whatsoever.
7    A.  No.
8    Q.  Do your medical records
9  reflect any of the operative procedures
10  that you have just described to me when
11  performing these nerve blocks?
12    A.  Generally not, no.
13    Q.  Are you a member of the
14  American Medical Association?
15    A.  No.
16    Q.  Okay.  I guess I'd like to
17  start with the recent billing chart
18  that was just provided to me.
19    MR. KELLS:  Which exhibit is
20  that?
21    MR. DeGARIS:  Exhibit 11.
22    THE WITNESS:  I've got it
23  right here.

35  (Pages 137 to 140)

## 367 VALLEY AVENUE
## (205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# Exhibit J

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL P. ALLEN, et al.,     )
                             )
        Plaintiffs,       )
                             )
v.                      ) CIVIL ACTION NO.: CV 2:06-cv-879-WKW
                             )
UNITED STATES OF AMERICA,  )
                             )
        Defendants.    )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WALLACE MONTGOMERY, et al.,  )
                             )
        Plaintiffs,       )
                             )
v.                      ) CIVIL ACTION NO.: CV 2:06-cv-880-WKW
                             )
UNITED STATES OF AMERICA,  )
                             )
        Defendant.     )

**NOTICE TO TAKE DEPOSITION UPON ORAL EXAMINATION
AND/OR PRODUCTION OF DOCUMENTS**

TO:               Conor Kells, Esquire
                 Gail K. Johnson, Esquire

TIME:           2:00 p.m.

DATE:           Thursday, February 14, 2008

DEPONENT'S NAME:  DR. KEITH WEAVER
                 (to testify as to all plaintiffs)

LOCATION:        Birmingham Bone and Joint Surgeons
                 924 Fulton Street, S.W.
                 Birmingham, AL 35211
                 (205)786-0315

COURT REPORTER:   Freedom Court Reporting
                 367 Valley Avenue
                 Birmingham, AL  35209

Please take notice that at the above-stated time, date and location, the Plaintiffs will, by oral examination, take the testimony of the deponent whose name and address is listed above, for the purpose of discovery and/or for use as evidence in the action before the court reporter whose name is listed above or before some other duly qualified officer, in accordance with Rules 26 through 37 of the Federal Rules of Civil Procedure. The oral examination will continue until completed.

The deponent is requested to have the following documents available at his deposition:

1.    Any and all office notes, medical records, medical reports, x-ray reports and x-rays not previously produced concerning all plaintiffs in the above case.

This the **12th** day of **February 2008**.

/s/ J. CALLEN SPARROW
J. Callen Sparrow (ASB-4515-R79J)
Attorney for the Montgomery Plaintiffs
HENINGER GARRISON DAVIS, LLC
P. O. Box 11310 (35202)
2224 1st Avenue North
Birmingham, AL  35203
Telephone:    (205)326-3336
Facsimile:    (205)326-3332
E-mail:        jcsparrow@hgdlawfirm.com

/s/ ANNESLEY H. DEGARIS
Annesley H. DeGaris (ASB-9182-A63A)
Attorney for Plaintiffs, Michael Allen,
Lou Ellen Allen, and Lorie S. Allen
CORY,    WATSON,    CROWDER    &
        DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, Alabama 35205
Telephone:  (205) 328-2200
Facsimile:  (205) 324-7896
E-Mail:        adegaris@cwcd.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel to this proceeding, to-wit:

Conor Kells, Esquire
Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
Post Office Box 888
Washington, DC  20004
E-mail:    conor.kells@usdoj.gov

Gail K. Johnson, Esquire
Torts Branch, Civil Division
U.S. Department of Justice
P. O. Box 888
Washington, DC  20044

by e-mail on this the 12th day of February 2008.

/s/ J. CALLEN SPARROW
OF COUNSEL

3