## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MICHAEL ALLEN, et al.           )
                             )
             Plaintiffs,     )
                             )
V.                                )      Case No. 2:06-cv-879-WKW
                             )
UNITED STATES OF AMERICA    )
                             )
             Defendant.    )

---

WALLACE MONTGOMERY, et al.    )
                             )
             Plaintiffs,     )
                             )      Case No. 2:06-cv-880-WKW
V.                                )
                             )
UNITED STATES OF AMERICA,    )
                             )
             Defendant.    )

## DEFENDANT UNITED STATES' MOTION IN LIMINE TO EXCLUDE
## THE TESTIMONY OF PETER L. FLANNER ON THE ISSUES OF ACCIDENT
## RECONSTRUCTION AND CAUSATION

Defendant United States, by and through its undersigned counsel, hereby moves to

exclude the testimony of Peter L. Flanner on the issues of accident reconstruction and causation

of the accident. As will be shown below, Mr. Flanner is not qualified to testify on these issues;

he was not designated by plaintiffs as an expert as to accident reconstruction or causation; and

his expert witness report did not contain opinions on these two issues.

**Background**

Plaintiffs retained Mr. Flanner as "an expert in the area of tire manufacturing and failure analysis. Based on his training, education and experience in the area of tire manufacture and failure, he will offer testimony at this trial of this action concerning the tire recently produced by the Defendant. Mr. Flanner will testify consistent with the opinions contained in his expert report attached hereto." Exhibit A, Plaintiffs' Rule 26 Expert Designations filed on September 18, 200 ("Expert Designation"), at 2, ¶ 2; Exhibit B, Report of Peter Flanner ("Flanner Report"). At his deposition on November 13, 2007, Mr. Flanner explained why he was retained by the Plaintiffs:

> Q:    So I take it that you've expressed ***no opinions regarding anything other than the cause of the tire failure*** in this case?
>
> A:    ***Yes. That what why I was retained. I was asked to address the issues regarding tire failures, mode and effects.***

Exhibit C, Flanner Dep. 42:9-14, Nov. 13, 2007 (emphasis added).

Plaintiffs did not proffer Mr. Flanner as "an accident reconstruction expert" and he conceded this point readily.

> Q:    Mr. Flanner, do you hold yourself out as an expert in accident reconstruction?
>
> A:    No, I do not.

*Id.* at 42:6-8.

Consistent with these limitations on expertise, Mr. Flanner did not indicate in his expert report that he would testify as to issues involving accident reconstruction and/or the cause of the accident (other than the tire failure, of course). Exhibit B, Flanner Report. Mr. Flanner is the

2

president of TIRExpertise Inc., a company he established in Madison, Alabama that specializes in tire consultancy and failed tired analysis. *Id.* at 1, ¶11; 3, ¶ 4.

### A.    Mr. Flanner's Testimony is Beyond the Scope of His Expert Report

Federal Rule 26(a)(2) of the Federal Rules of Civil Procedure provides that an expert shall prepare a written report that contains a "complete statement of all opinions to be expressed and the basis and reasons therefor." *Principi v. Survivair, Inc.*, 231 F.R.D. 685, 692 (M.D.Fla. 2005) (citing FED. R. CIV. P. 26).

When questioned during the deposition as to whether there is "nothing outside of these opinions and conclusions" in his expert report that he would testify to at trial," Mr. Flanner responded that he would not unless "some information becomes available that might modify those comments in some way." Flanner Dep. 47:10-48:3, Nov. 13, 2007. However, throughout the deposition, Mr. Flanner offered several opinions where he essentially served as an accident reconstructionist and opined as to how he theorized the accident occurred. For example, he speculated as to the speed at which Mrs. Moore's vehicle was traveling at the time of the accident, and he opined that the vehicle hit the concrete culvert. *Id.* at 89:21-90:18; 103:7-104:16. Ironically, Mr. Flanner, after giving his views, often admitted that he was either not "retained to make those calculations [as to speed, inertia and centrifugal forces]. I believe that's an accident reconstructionist's [job]" or that "[he] cannot say, and nobody can say with a hundred percent certainty, that these events [hitting the culvert] happened in this exact sequence." *Id.* at 90:19-22; 104:3-5. The United States, however, files this motion in limine in anticipation that Plaintiffs will attempt to offer accident reconstruction and causation (other than as to the tire failure) testimony through Mr. Flanner.

3

Here, Mr. Flanner's expert report did not address issues such as the speed of the vehicle, and the vehicle hitting the concrete culvert. Therefore, his testimony on these issues is outside the scope of his expert report. In *Forest Laboratories., Inc. v. Ivax Pharmaceuticals., Inc.*, the court excluded an expert witness's testimony regarding how the FDA would treat a violation of a study protocol because those opinions were not contained within his expert report. 237 F.R.D. 106, 113 (D.Del. 2006). Furthermore, the court found that although the witness "did address the FDA issue during his deposition, that does not serve to place his trial testimony within the scope of his expert report." *Id.*

Moreover, the fact that he addressed these issues during his deposition will not serve to place the testimony within the scope of his expert report. Mr. Flanner's testimony should be limited to the opinions expressed in his expert report. Accordingly, Mr. Flanner's opinions outside of those expressed in his expert report must be excluded.

**B.    Mr. Flanner's Testimony Fails to Meet the Standards Set by Rule 702**

Rule 702 of the Federal Rules of Evidence, "controls the admission of expert testimony." *U.S. v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.[1]

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court "made abundantly clear" that district courts must perform the "critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *Frazier*, 387 F.3d at 1260

---

[1] FED. R. CIV. P. 702.

(citing *Daubert*, 509 U.S. at 589). Courts must "ensure the reliability and relevancy of expert

testimony." *Id.* Thus, to determine the admissibility of evidence under Rule 702, courts apply a

"rigorous" three part test. *Id.* Expert testimony is admissible if:

> (1) the expert is qualified to testify competently regarding the
> matters he intends to address;
>
> (2) the methodology by which the expert reaches
> his conclusions is sufficiently reliable as determined by the
> sort of inquiry mandated in *Daubert*;
>
> (3) the testimony assists the trier of fact, through the
> application of scientific, technical, or specialized
> expertise, to understand the evidence or to determine a fact
> in issue.

*Id.*

Mr. Flanner's deposition testimony regarding his opinions on accident reconstruction and

causation of the accident fails to satisfy the first requirement of admissibility. Mr. Flanner's area

of expertise is not accident reconstruction or accident causation (other than tire failure) and he is

not qualified to testify as to these issues. As noted earlier, he admits his limited expertise and

that he is not an expert in accident reconstruction. Despite this admission, however, throughout

the deposition, Mr. Flanner offered various opinions on accident reconstruction and causation of

the accident such as the following:

> "The massive damage to the tire occurred after the loss of control
> as the vehicle crossed the central grass median, which from
> accident scene photographs includes a concrete culvert, became
> airborne and crashed into the plaintiff's vehicle traveling in the
> southbound lanes of I-65."

Flanner Dep. 60: 2-8, Nov. 13, 2007.

> "So this sort of damage that we're looking at can only have

5

occurred in my view at relatively high rate of speed and the vehicle impacting something other than a grass median had to be something really substantial because it actually split the tire down the tread, down the center of the tread. And that's shown on –in some of my photographs. And that's very, very difficult."

*Id.* at 60:17-61:2.

"[I]t can only be supposition, is that the vehicle hit a part of the concrete culvert, which was probably raised, particularly over the grass median, such that all of the weight of the vehicle fell onto that area of the tire and it just destroyed it."

*Id.* at 61:15-20.

"I think there's some dispute about the speed involved in the accident. I think Ms. Moore claims she was doing 65. This trooper claims 83 or something. So the only point I would make is that the- the inertia and centrifugal forces involved between an accident at 65 miles an hour and 83 miles an hour are very, very substantial. I'm not saying either way, but all I'm saying is at that area speed and one would- could well expect to see the sources of damage that this tire suffered."

*Id.* at 89:21-90:9.

"And the massive damage is a- is a matter of physics of that tire on that vehicle hitting something hard…and it's not my job to- I haven't been retained to make those calculations. I believe that's an accident reconstructionist's."

*Id.* at 90:16-22.

In *Weisgram v. Marley Co.*, the 8th Circuit excluded the testimony of a fire captain on the issue of whether a heater malfunction might have caused the fire. 169 F.3d 514, 518 (8th Cir.1999). The court noted that despite the fact that the fire captain admitted that he was "not an electrical expert" and that he did not "know what happened with the heater," he was allowed to offer his opinion that the heater malfunctioned to cause the fire." *Id.* The court found that

6

although the fire captain "was qualified as a fire cause and origin expert, there is no question that he was not qualified to offer an opinion that the Weisgram heater malfunctioned and he should not have been permitted to do so." *Id.*

Here, Mr. Flanner himself acknowledged that he is not an accident reconstruction expert, as did the expert witness in *Weisgram*. Nevertheless, during his deposition, he testified on such issues as the sequence of events of the accident and the speed at which the car traveled. While Mr. Flanner is qualified as a tire failure expert, there is no question that he is not qualified to testify as to issues regarding accident reconstruction and the cause of the accident (other than the tire failure). Thus, Mr. Flanner's testimony as to these issues should be excluded.

## Conclusion

Mr. Flanner's deposition testimony regarding accident reconstruction and causation (not related to the tire failure) of the accident is beyond the scope of the opinions contained in his expert report. Additionally, Mr. Flanner is clearly not qualified to testify as an accident reconstruction expert and admitted as much during his deposition testimony. Accordingly, Mr.

//

//

//

//

//

//

//

7

Flanner's testimony as to accident reconstruction and causation of the accident must be excluded.

The United States respectfully requests the grant of this motion in limine.

                                        Respectfully Submitted,

                                        JEFFREY S. BUCHOLTZ
                                        Acting Assistant Attorney General
                                        Civil Division

                                        PHYLLIS J. PYLES
                                        Director, Torts Branch
                                        Civil Division

                                        GAIL K. JOHNSON
                                        Senior Trial Counsel, Torts Branch
                                        Civil Division

                                        /s/ Conor Kells
                                        CONOR KELLS
                                        Trial Attorney
                                        United States Department of Justice
                                        Torts Branch, Civil Division
                                        Post Office Box 888
                                        Benjamin Franklin Station
                                        Washington, DC  20044
                                        Tel: (202) 616-4400
                                        Fax: (202) 616-5200
                                        Attorneys for Defendant United States

8

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the foregoing upon counsel for

Plaintiffs by electronic filing, CM/ECF:

> Annesley H. DeGaris
> Attorney for the Allen Plaintiffs
> Cory, Watson, Crowder & DeGaris, P.C.
> 2131 Magnolia Avenue, Suite 200
> Birmingham, Alabama  35205
>
> J. Callen Sparrow
> Attorney for the Montgomery Plaintiffs
> Heninger Garrison Davis, L.L.C.
> P.O. Box 11310 (35202)
> 2224 1st Avenue North
> Birmingham, Alabama  35203

Dated this 18th day of February, 2008.

> /s/ Conor Kells
> Trial Attorney, Torts Branch
> Civil Division

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| MICHAEL P. ALLEN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-879-WKW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| WALLACE MONTGOMERY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-880-WKW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RULE 26 EXPERT DESIGNATIONS**

COME NOW, the Plaintiffs, in the above-styled action, and disclose the following

individuals who are expected to provide expert opinions at the trial of this consolidated matter:

1.    Clifford A. Prosser
      Traffic Accident Consulting Services
      4248 Fieldstone Drive
      Birmingham, AL 35215

Mr. Prosser is an accident reconstructionist. He practices in the field of automotive

accident reconstruction. He has previously been admitted to testify as an expert in the Middle

District of Alabama.

Mr. Prosser has been retained by the Plaintiffs to offer expert testimony at the trial of this matter, and specifically render expert opinions concerning this accident made the basis of this action. Mr. Prosser will testify consistent with the opinions contained in his expert report attached hereto. Mr. Prosser's CV, Case List and Fee Schedule are also attached hereto. See Exhibit A.

Mr. Prosser reserves the right to review additional facts and supplement his opinion as needed as discovery is still ongoing in the above-styled consolidated cases.

2.     Peter L. Flanner
       TIRExpertise Inc.
       104 Bluebelle Drive
       Madison, AL 35758

Mr. Flanner is an expert in the area of tire manufacturing and failure analysis. Based on his training, education and experience in the area of tire manufacture and failure, he will offer testimony at this trial of this action concerning the tire recently produced by the Defendant. Mr. Flanner will testify consistent with the opinions contained in his expert report attached hereto. Mr. Flanner's CV, Case List and Fee Schedule are also attached hereto. See Exhibit B.

Mr. Flanner reserves the right to review additional facts and supplement his opinion as needed as discovery is till ongoing in the above-styled consolidated cases.

s/ Annesley H. DeGaris
Annesley H. DeGaris (ASB-9182-A63A)
Attorney for the Allen Plaintiffs
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, Alabama 35205
Telephone:  205-328-2200
Facsimile:  205-324-7896
E-mail:  adegaris@cwcd.com

s/ J. Callen Sparrow
J. Callen Sparrow (ASB-4515-R79J)
Attorney for Montgomery Plaintiffs
HENINGER GARRISON DAVIS, L. L. C.
P. O. Box 11310 (35202)
2224 1st Avenue North
Birmingham, AL 35203
Telephone:  205-326-3336
Facsimile:  205-326-3332
E-mail:  jcsparrow@hgdlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of September, 2007, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties:

Conor Kells
Gail K. Johnson
United States Department of Justice
Torts Branch, Civil Division
Post Office Box 888
Benjamin Franklin Station
Washington, DC 20004

s/ Annesley H. DeGaris
Annesley H. DeGaris

# Exhibit B

*TIRExpertise Inc*

# *T I R E x p e r t i s e  I n c.*

## Tire Consultancy and Tire  Failure Analysis
### *PETER.L.FLANNER*
### *PRESIDENT.*

104,Bluebelle Drive,
Madison,Al. 35758

**Phone/Fax**:  (256) 772-4971
**Cell Phone**:  (256) 655-3465
**E-mail:**  plflanner@AOL.com

### Wallace Montgomery et al & Michael Allen et al vs. United States of America.

I have been retained by the plaintiffs in the above captioned case to review evidence & carry out a detailed inspection of the tire involved in an August,2003 accident on I-65 near mile marker 106 in Alabama.This report is submitted pursuant to Federal Rules of Civil Procedures 26(a)(2)(B).

Identity of Expert Witness.

PETER L.FLANNER

President,

TIRExpertise,Inc.

104,Bluebelle Drive,

Madison,

Alabama,35758

(256)772-4971.

Summary Opinion.

I have completed my examination of the incident tire installed on the Left Rear position on the 1997 Mercury Mountaineer involved in the above-captioned matter.After a detailed examination of the physical evidence & a review of the information provided,I have concluded that the incident tire suffered an air loss following the ejection of a large screw that had previously penetrated the tire structure.The massive damage to the tire detailed in my Inspection Report & Photographs occurred after the tire deflation,when the vehicle went out of control,crossed the median & impacted the vehicles being driven by Mr.Allen & Ms. Montgomery.



DEFENDANT'S
EXHIBIT
2
FLANNER

1

### *TIRExpertise Inc*

<u>Complete Statement of All Opinions to be Expressed and the Basis and Reasons Therefore.</u>

I,Peter Flanner,will testify on behalf of the plaintiffs,Messrs Montgomery & Allen as an expert in the field of tire failure analysis and will address the issues regarding tire failure mode and effects.

My opinions & conclusions are based upon my training,experience & expertise in tire design/development,tire testing,the analysis & evaluation of failed tires,visual & tactile examination of the incident tire & review of file materials provided by counsel,especially Alabama Uniform Traffic Accident Report #3522163,Accident Scene Photographs & the deposition of Bertha M.Moore.

My opinion & conclusions will include the following:-

1. The incident tire was punctured by a large screw,which would have caused a gradual loss of inflation pressure.Approximate dimensions,1/8" diameter with a screw head of ~3/8" diameter.

2. The screw is no longer in the tire.

3. The screw completely penetrated the tire structure.

4. Although it is impossible to determine the length of time that the screw had been in the tire,the imprint of the screw head around the ingress point would suggest that it had been in the tire for some time & <u>did not penetrate the tire for the first time at the time of the accident</u>.

5. The massive damage to the tire occurred after the loss of control as the vehicle crossed the central grass median,which,from accident scene photographs,includes a concrete culvert,became airborne & crashed into the plaintiffs' vehicles traveling in the Southbound lanes of I-65.

6. There was no manufacturing defect in the P235/75R15 Cordovan XRT Wild Trac steel-belted radial tire mounted on the Left Rear position.Based upon the D.O.T. number,this tire was manufactured during the 27th. week of 2000 by Goodyear at their Fayetteville,N.C. Plant for T.B.C. Corporation-a large distributor of Private Brand tires.This tire is an appropriate fitment on a Mercury Mountaineer based upon size & load carrying capacity.

7. Ms.Moore purchased the 1997 Mercury Mountaineer vehicle (similar to the Ford Explorer) in May of 2003,less than 4 months before the accident.She stated in her deposition that the tires on the vehicle at the time of the accident were on the vehicle at the time of purchase.

8. The tire was approximately 80% worn with an average of 2/32" of usable tread remaining with relatively even tread wear.

<u>Background</u>

On August 29th.2003,according to deposition testimony of Ms.B. Moore,she was returning from a conference in Perdido Beach to her residence in Montgomery in her 1997 Mercury Mountaineer.She was traveling North on I-65 in rainy weather.She estimated her speed at 60 -65 m.p.h. & at 2:25 p.m. near the 106.1

*TIRExpertise Inc*

mile post,she experienced a rapid deflation of the Left Rear tire,lost control,crossed the median & impacted the plaintiffs' vehicles,which were traveling South-bound on I-65.Although accident scene photographs show the median as being largely grassy there are also regularly spaced concrete culverts located in the median.The Left rear tire suffered massive trauma resulting in multiple sidewall splits & 2 areas in the tread portion where the impacts had completely severed the tire structure in the tread area.

<u>Qualifications of P.L.Flanner.</u>

I retired from Goodyear Dunlop Tires North America at the end of 2003 after a 45 year career in various Technical & Managerial capacities.My attached curriculum vitae lists the positions held over that period. I hold a Higher National Certificate in Applied Physics.

I joined Dunlop Tyres Ltd. at their World Technical Headquarters in Birmingham,England in 1958 as a Technical Trainee.After assignments in Quality Assurance,Tire Test Research & Radial Tire Technology transfer to Overseas plants,I was appointed to Dunlop U.S.A.'s HQ in Buffalo N.Y. in 1976. to continue with the transfer of Dunlop European Radial Tire Technology to the North American Plants.Additionally,I established relationships with the U.S. Offices of vehicle manufacturers fitting Dunlop tires & set-up a Field/Customer Service function to gather & analyse complaints on imported Dunlop tires.This model was adopted Company-wide & I headed up that Organization & also introduced the techniques for statistical analysis of product performance as a tool to continually improve the performance & acceptance of Dunlop tire products in the U.S.A.This also included the analysis & dissection of tires returned from the market & coordinating the adoption & evaluation of corrective countermeasures.Over that & subsequent periods I examined many thousands of tires-motorcycle,passenger car,light & medium truck,industrial & O.T.R. tires.

Other areas of expertise include design,development & testing of passenger car,light truck & medium truck radial tires for the U.S. market.At the time of my retirement I was Product Evaluation Manager at the Huntsville,Alabama facility charged with the testing & analysis of Dunlop products to Customer,Federal & stringent internal Dunlop requirements.

After my retirement I established TIRExpertise Inc.,specializing in Tire Consultancy & Tire Failure Analysis in Madison,Alabama.My business covers many types of tires ranging from Motorcycle,Passenger Car,Light Truck & Medium Truck tires to large Off-The-Road Earthmover tires.I accept commissions from both Plaintiffs & Defendants,where I & they feel my knowledge & experience would be beneficial.

This broad experience makes me qualified to deliver authoritative opinions in areas of my expertise in regard to the Moore tire.

<u>Methodology;The Data or any Information Considered by the Witness in Forming His Opinion.</u>

3

### TIRExpertise Inc

The primary basis for opinions expressed in this Report was derived from detailed examination of the incident tire from the Moore vehicle utilizing visual,tactile & measurement techniques & methods well-known in the tire failure analysis community.

The examination notes from inspection of the incident tire are appended,as are copies of digital photographs.

Additionally,I have reviewed the following information sources:-

Deposition.

    1.  Moore,Bertha M. August 7,2007.

Accident Report.

    1.  Alabama Uniform Traffic Accident Report,August 29,2003 by Trooper Fisher.

Accident Scene Photographs.

    1.  Provided by J.C.Sparrow.

Other Documents.

    1.  "Who Makes It & Where"-a Bennett Garfield Publication.

    2.  "Tire Guide"-a Bennett Garfield Publication.

    3.  "The Tire & Rim Association Yearbook."

    4.  "The Investigator's Guides to Tire Failures.Chapter 6-'Penetrations & Punctures' " R.J.Grogan.Institute of Police Technology & Management.

Any Exhibit to be Used as a Summary or in Support of the Opinions.

    1.  Tire Report & Opinions.

    2.  Tire Examination Notes.

    3.  Incident Tire.

    4.  Wear Measurements.

    5.  Digital Photographs of Incident Tire.

    6.  Literature References denoted in the Report or Excerpts there from.

The Qualifications of the Witness including a List of Publications Authored by the Witness within the Preceding Ten(10) Years.

A curriculum vitae is attached hereto.All publications authored during the preceding ten(10) years were made during my employment with Dunlop & Goodyear & are subject to Confidentiality Agreements.

Compensation to be Paid for the Study & Testimony.

A copy of my Professional Services Agreement is Attached.

Listing of Other Cases the Witness has Testified in as an Expert Witness at Trial or Deposition within the Preceding Four(4) Years.

4

*TIRExpertise Inc*

A list reflecting the above-required information is included in my curriculum vitae.


I reserve the right to supplement this report should additional information become available.

Peter L. Flanner.

President,

*TIRExpertise Inc.*


Date: 9-17-2007

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Northern Division

MICHAEL ALLEN,                      )
                                    )
        Plaintiff,                  ) Case No. 2:06-cv-879-WKW
                                    )
-vs-                                )
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        Defendant.                  )
_____

WALLACE MONTGOMERY, et al.,)
                                    )
        Plaintiff,                  ) Case No. 2:06-cv-880-WKW
-vs-                                )
                                    )
UNITED STATES OF AMERICA,           )
                                    )
        Defendant.                  )

C A P T I O N

        THE DISCOVERY DEPOSITION OF PETER FLANNER, taken

pursuant to Notice before R. Keith Kennedy, a Notary Public

for the State of Alabama at Large, on the 13th day of

November 2007, beginning at approximately 9:00 a.m., at the

law offices of Heninger Garrison Davis, L.L.C., 2224 1st

Avenue North, Birmingham, Alabama; said deposition taken

pursuant to the Federal Rules of Civil Procedure.

KENNEDY REPORTING SERVICES
205 20TH STREET NORTH, SUITE 408
BIRMINGHAM, ALABAMA 35203
(205) 251-2427

```
 1      I mean, others may come up as we go through --
 2      through my report.
 3      Q          But those are the major references?
 4      A          The major references.
 5      Q          Thank you.
 6                 Mr. Flanner, do you hold yourself out
 7      as an expert in accident reconstruction?
 8      A          No, I do not.
 9      Q          So I take it that you've expressed no
10      opinions regarding anything other than the cause
11      of the tire failure in this case?
12      A          Yes.  That was why I was retained.  I
13      was asked to address the issues regarding tire
14      failures, mode and effects.
15      Q          Mr. Flanner, do you -- do you only get
16      retained in cases where a tire failure results
17      and no injury to anybody?
18      A          Well, this -- the plaintiffs and the
19      defendants sides of any case, and I have been
20      retained more frequently -- well, more recently
21      by Buick North America being a major employer of
22      mine to -- to look at tire failures.  And you'll
23      see in my rate schedule I make no promises up
```

```
 1      Q          Sure.  If you could, just -- I'm going
 2      to take a look at your report.  And you can
 3      follow along right with me.  Once, again, it's
 4      Defendant's Exhibit 2, I believe, just to make
 5      sure that we're on the same page.
 6      A          Yes, sir.
 7      Q          I'm going to turn to page 2 of your
 8      report.
 9      A          Uh-huh (affirmative response.)
10      Q          And I just want to go through your --
11      I guess complete statement of all opinions to be
12      expressed and the basis and the reasons
13      therefore.
14      A          Uh-huh (affirmative response.)
15      Q          I take it that these are all of the
16      opinions and conclusions that you would testify
17      to at trial?
18      A          That's correct.
19      Q          And there's nothing outside of these
20      opinions and conclusions that you would testify
21      to at trial?
22      A          Well, not unless something -- some
23      more information becomes available that might
```

```
 1        modify those comments in some way.
 2                 But, other than that, if nothing else
 3        becomes available that will be my opinions.
 4        Q        Let's take a look number at number
 5        one, (Reading)  The incident tire was punctured
 6        by a large screw, which would have caused a
 7        gradual loss of inflation pressure.  Approximate
 8        dimensions 1/8 of an inch diameter with a screw
 9        head of approximately 3/8's of an inch diameter.
10        A        Yes, sir.
11        Q        Would you just tell me what's the
12        basis for that finding?
13        A        I measured, on the tire itself, the
14        actual dimensions using a digital micrometer so
15        I could measure both the inside and outside
16        dimensions.
17                 The appearance of the outside of the
18        -- on the surface of the tire certainly showed
19        that it was unlikely to be a nail because of the
20        relative size difference between the diameter of
21        the shank and the head, is not what we normally
22        see on a nail.  And also there was some
23        indications of this -- of the screw threads
```

```
 1        Defendant's Exhibit 2, which is your report.

 2                    (Reading)  The massive damage to the

 3        tire occurred after the loss of control as the

 4        vehicle crossed the central grass median, which

 5        from accident scene photographs includes a

 6        concrete culvert, became airborne and crashed

 7        into the plaintiff's vehicle traveling in the

 8        southbound lanes of I-65.

 9        A        Yes.

10        Q        What was the basis for that particular

11        opinion regarding the damage to the tire

12        occurring after loss of control?

13        A        Well, I've looked at a lot of failed

14        tires and I've never seen a tire with more

15        massive damage than this one ever.  This really

16        did take a hit.

17                    So this sort of damage that we're

18        looking at can only have occurred in my view at

19        relatively high rate of speed and the vehicle

20        impacting something other than a grass median

21        had to be something really substantial because

22        it actually split the tire down the tread, down

23        the center of the tread.  And that's shown on --
```

1    in some of my photographs.  And that's very,

2    very difficult.

3    Q        If you could, just identify one of

4    those photographs and we'll mark it as a

5    Defendant's Exhibit.

6    A        It's very difficult to split a tire

7    tread down the center.  And in the tire testing

8    business we've been trying to do it for years

9    unsuccessfully because it's very difficult to

10   do.  And it requires so much force it becomes a

11   little bit of a hazard for anybody performing

12   the test.

13            And, so, that said, I've never seen a

14   tire with this much damage, particularly in the

15   tread area.  And my -- it can only be

16   supposition, is that the vehicle hit a part of a

17   concrete culvert, which was probably raised,

18   particularly over the grass median, such that

19   all of the weight of the vehicle fell onto that

20   area of the tire and it just destroyed it.

21            And let me just find that photograph.

22            MR. DEGARIS:  Is that the one?

23            THE WITNESS:  That's the one.

```
 1    A           That, I don't know.

 2    Q           Do you know how he came up with this

 3    diagram on the back of the accident report?

 4    A           I believe that's his job.

 5    Q           Do you know how he did it?

 6    A           I haven't spoken to Trooper Fisher.

 7    Q           Are you aware of any other diagrams of

 8    the accident that were completed?

 9    A           I'm not aware of any more.

10    Q           Is there anything, in particular, in

11    this report that you relied upon to come up with

12    your conclusions about the tire failure itself?

13    A           Not specifically.

14    Q           So then would it be fair to say that

15    nothing in this report was relied upon by you to

16    come up with your analysis of the tire failure?

17                MR. DEGARIS:  Object to the form.

18                THE WITNESS:  Well, it may be the one

19    area.  If I could just have that back.

20    Q           (By Mr. Kells)  Sure.

21    A           I think there's some dispute about the

22    speed involved in the accident.  I think Ms.

23    Moore claims she was doing 65.  This trooper
```

```
 1      claims 83 or something.
 2                   So the only point I would make is that
 3      the -- the inertia and centrifugal forces
 4      involved between an accident at 65 miles an hour
 5      and 83 miles an hour are very, very substantial.
 6                   I'm not saying either way, but all I'm
 7      saying is at that area speed and one would --
 8      could well expect to see the source of damages
 9      that this tire suffered.
10      Q         Can you show me where you have that in
11      your report?
12      A         Well, I am -- I'm making that make, if
13      you like, side bar comment based upon the fact
14      that I have said throughout the massive damage
15      to the tire itself.
16                   And the massive damage is a -- is a
17      matter of physics of that tire on that vehicle
18      hitting something really hard.
19                   And one -- and it's not my job to -- I
20      haven't been retained to make those
21      calculations.  I believe that's an accident
22      reconstructionist's.
23      Q         Right.
```

```
 1      a detailed inspection of the tire involved in

 2      this August 2003 accident.

 3              I wasn't asked just to look at a

 4      puncture hole, I was asked to look at the whole

 5      thing and also the evidence surrounding it.  And

 6      that's exactly what I've done.

 7      Q       Looking back at your report, finding

 8      number 5 --

 9      A       Uh-huh (affirmative response.)

10      Q       -- you say that there's massive damage

11      to the tire.  And you say that there is, in

12      fact, a concrete culvert in the median.

13      A       Uh-huh (affirmative response.)

14      Q       You don't state that the culvert is

15      what caused the massive damage to the tire.

16              Is that because you are not an

17      accident reconstructionist and are not qualified

18      to make that determination?

19              MR. DEGARIS:  He's also looking if

20      there was an accident -- if there was a

21      manufacturing defect, which is discussed in

22      number 6.

23              THE WITNESS:  I'm using my experience
```

```
 1    with information I've got to make a

 2    determination.

 3              I cannot say, and nobody can say with

 4    a hundred percent certainty, that these events

 5    happened in this exact sequence.

 6              All one can look at is the

 7    circumstances around that accident.  And the

 8    circumstantial evidence says in my view, as a

 9    tire expert never having seen a tire this

10    destroyed before, that this tire must have hit

11    something substantial, not a grassy median.

12              So what else is available in the area

13    of the accident that could possibly cause that

14    damage?

15              And the answer is, the concrete

16    culverts.

17    Q         (By Mr. Kells)  Could a high speed

18    collision with an automobile?

19    A         No.

20    Q         That's not a substantial impact on a

21    tire?

22    A         You go look at the area of the damage

23    of the tire.  I've seen tires that have been
```