**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL P. ALLEN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: CV 2:06-cv-879-WKW** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **WALLACE MONTGOMERY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.: CV 2:06-cv-880-WKW** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION IN LIMINE
TO EXCLUDE THE TESTIMONY OF PETER FLANNER ON THE
THE ISSUES OF ACCIDENT RECONSTRUCTION AND CAUSATION**

The defendant has filed a Motion in Limine in an effort to exclude testimony by plaintiffs' expert, Peter Flanner, on the issues of accident reconstruction and causation. The bottom line is that the defendant does not want Mr. Flanner to testify regarding the severe damage suffered by the tire involved in this case and his opinions as to what could have caused this damage. The reason the defendant does not want this testimony from Mr. Flanner is that it gives rise to clear inferences of excessive speed on behalf of Ms. Moore.

The defendant has taken the position that testimony offered by Mr. Flanner in his deposition relating to the tire damage some how deviates from the opinion set forth in the

expert report produced earlier in this case. The defendant then appears to take the position that Mr. Flanner is not qualified to offer opinions regarding the damage to the tire and what may have caused said damage.

The defendant has mischaracterized the deposition testimony of the plaintiffs' expert and are simply wrong about his qualifications. Mr. Flanner's deposition testimony is not beyond the scope of his expert report.

In his report, Mr. Flanner summarizes his opinion stating, in part, as follows:

> The massive damage to the tire detailed in my inspection report and photographs occurred after the tire deflation, when the vehicle went out of control, crossed the median and impacted the vehicles being driven by Mr. Allen and Mrs. Montgomery.

(See Page 1 of Mr. Flanner's report attached hereto as Exhibit "A").

On Page 2 of his report, Mr. Flanner states as follows:

> The massive damage to the tire occurred after the loss of control as the vehicle crossed the central grass median, which, from accident scene photographs, includes a concrete culvert, became airborne and crashed into the plaintiffs' vehicles traveling in the southbound lanes of I-65.

(See Page 2 of Mr. Flanner's report attached hereto as Exhibit "A").

Finally, on Page 3 of his report, Mr. Flanner states as follows:

> The left rear tire suffered massive trauma resulting in multiple sidewall splits and two areas in the tread portion where the impacts had completely severed the tire structure in the tread area.

(See Page 3 of Mr. Flanner's report attached hereto as Exhibit "A").

These opinions are offered by Mr. Flanner and the plaintiffs in order to fully develop the inspection and/or analysis of the tire in an effort to determine what may and may not have caused the deflation alleged by Ms. Moore. In this case, distinctions have been made

between deflation of the tire through the hole created by a puncturing object and a "blow-out." Without the aide of the expert, neither the lawyers nor the Court would be able to look at the subject tire and distinguish with any certainty what caused any given damage to the tire. What Mr. Flanner's testimony tells us, as stated in his report, is that the obvious massive damage to the tire was not the cause of the deflation, nor was it caused by or during the deflation. This determination is required as part of the tire inspection in order to determine what <u>did</u> cause the deflation. Mr. Flanner goes on to testify that the deflation was the result of ejection of a puncturing object - most probably a screw - and subsequent deflation through the hole created by that puncture. (See photograph attached as Exhibit "B"). This deflation is necessarily more gradual than a catastrophic "blow-out."

Mr. Flanner goes on to testify regarding areas of the tread where the tire had failed. He describes that damage as two areas in the tread portion where the impacts had completely severed the tire structure. Once again, this is not accident reconstruction. This is expert testimony by Mr. Flanner regarding failure or damage to a component of the tire. Mr. Flanner further testified that in his opinion this kind of tread damage

> can only have occurred in my view at relatively high rate of speed and the vehicle impacting something other than a grass median - had to be something really substantial because it actually split the tire down the tread down the center of the tread.

(See Flanner deposition, p. 60, attached hereto as Exhibit "C").

In explaining his opinion further, Mr. Flanner states:

> It's very difficult to split a tire tread down the center. And in the tire testing business we have been trying to do it for years unsuccessfully because it's very difficult to do. And it requires so much force it becomes a little bit of a hazard for anybody performing the test.

> And, so, that said, I've never seen a tire with this much damage, particularly in the tread area and my - it can only be supposition is that the vehicle hit a part of a concrete culvert, which was probably raised, particularly over the grass median, such that all of the weigh of the vehicle fell onto that area of the tire and just destroyed it.

(See Flanner deposition, p. 61, attached hereto as Exhibit "C").

It should be noted that Mr. Flanner's opinion with regard to the tire damage is consistent with that offered by the defendant's expert.

The plaintiffs are not offering Mr. Flanner's testimony regarding whether or not the vehicle driven by Ms. Moore became airborne at any time during the accident sequence. Similarly, the plaintiffs are not offering Mr. Flanner's testimony as an accident reconstructionist to determine that the vehicle crossed a concrete culvert - although that conclusion is consistent with other evident in the case. Mr. Flanner's testimony is as to the failure of the tire and the effect of forces on the tire. He is clearly qualified to give these opinions - including the opinion that the damage to the tire was consistent with an impact between the tire and some substantial object at a high rate of speed. Mr. Flanner was employed by Dunlop Tire Company for over forty years in virtually every capacity in the design, testing and development of many types of tires including the type made the subject of this lawsuit. (See Flanner's CV attached hereto as Exhibit D). Plaintiffs submit that the Court should determine the qualifications of Mr. Flanner when given the opportunity at trial and that defendant's Motion in Limine is misplaced. If the Court finds any testimony irrelevant or inadmissible then that determination should be made after a proffer of testimony at trial.

The defendant raises the issue in their motion of Mr. Flanner testifying as to the causation of the accident made the basis of this suit. Mr. Flanner has only testified as to

the tire, the tire components, and the tire's failure.   He has testified as to his opinions of the causation of tire failure but not the accident itself.  He is well qualified to testify as to what, in his opinion, caused the failure of the subject tire - including the deflation as well as any failure of other tire components.

Finally, it should also be noted that at the pretrial conference for this case when asked directly by the Court whether or not there were any Daubert challenges, the defendant indicated that there were not.  Plaintiffs have now been faced with a Daubert challenge less than one week prior to trial.

WHEREFORE, plaintiffs respectfully submit that defendant's Motion in Limine is due to be denied.

Respectfully submitted,

 /s/ J. CALLEN SPARROW
J. Callen Sparrow (ASB-4515-R79J)
Attorney for the Montgomery Plaintiffs

OF COUNSEL:

HENINGER GARRISON DAVIS, LLC
P. O. Box 11310 (35202)
2224 1st Avenue North
Birmingham, AL  35203
Telephone:   (205)326-3336
Facsimile:    (205)326-3332
E-mail:        jcsparrow@hgdlawfirm.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of February, 2008, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties:

Annesley H. DeGaris, Esquire
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL  35205
Attorney for the Allen Plaintiffs
E-mail:        adegaris@cwed.com

Conor Kells, Esquire
Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
Post Office Box 888
Washington, DC  20004
E-mail:        conor.kells@usdoj.gov

Gail K. Johnson, Esquire
Torts Branch, Civil Division
U.S. Department of Justice
P. O. Box 888
Washington, DC  20044

_____        /s/ J. CALLEN SPARROW_____
                    J. Callen Sparrow (ASB-4515-R79J)

# EXHIBIT "A"

*TIRExpertise Inc*

# *T I R E x p e r t i s e I n c.*

## Tire Consultancy and Tire Failure Analysis
### *PETER.L.FLANNER*
### *PRESIDENT.*

104,Bluebelle Drive,
Madison,Al. 35758

**Phone/Fax**:  (256) 772-4971
**Cell Phone**:  (256) 655-3465
**E-mail**:  plflanner@AOL.com

### Wallace Montgomery et al & Michael Allen et al vs. United States of America.

I have been retained by the plaintiffs in the above captioned case to review evidence & carry out a detailed inspection of the tire involved in an August,2003 accident on I-65 near mile marker 106 in Alabama.This report is submitted pursuant to Federal Rules of Civil Procedures 26(a)(2)(B).

### Identity of Expert Witness.

PETER L.FLANNER

President,

TIRExpertise,Inc.

104,Bluebelle Drive,

Madison,

Alabama,35758

(256)772-4971.

### Summary Opinion.

I have completed my examination of the incident tire installed on the Left Rear position on the 1997 Mercury Mountaineer involved in the above-captioned matter.After a detailed examination of the physical evidence & a review of the information provided,I have concluded that the incident tire suffered an air loss following the ejection of a large screw that had previously penetrated the tire structure.The massive damage to the tire detailed in my Inspection Report & Photographs occurred after the tire deflation,when the vehicle went out of control,crossed the median & impacted the vehicles being driven by Mr.Allen & Ms. Montgomery.

1

*TIRExpertise Inc*

<u>Complete Statement of All Opinions to be Expressed and the Basis and Reasons
Therefore.</u>

I,Peter Flanner,will testify on behalf of the plaintiffs,Messrs Montgomery & Allen
as an expert in the field of tire failure analysis and will address the issues regarding
tire failure mode and effects.

My opinions & conclusions are based upon my training,experience & expertise in
tire design/development,tire testing,the analysis & evaluation of failed tires,visual &
tactile examination of the incident tire & review of file materials provided by
counsel,especially Alabama Uniform Traffic Accident Report #3522163,Accident
Scene Photographs & the deposition of Bertha M.Moore.

My opinion & conclusions will include the following:-

1. The incident tire was punctured by a large screw,which would have caused
   a gradual loss of inflation pressure.Approximate dimensions,1/8" diameter
   with a screw head of ~3/8" diameter.

2. The screw is no longer in the tire.

3. The screw completely penetrated the tire structure.

4. Although it is impossible to determine the length of time that the screw had
   been in the tire,the imprint of the screw head around the ingress point would
   suggest that it had been in the tire for some time & <u>did not penetrate the tire
   for the first time at the time of the accident.</u>

5. The massive damage to the tire occurred after the loss of control as the
   vehicle crossed the central grass median,which,from accident scene
   photographs,includes a concrete culvert,became airborne & crashed into the
   plaintiffs' vehicles traveling in the Southbound lanes of I-65.

6. There was no manufacturing defect in the P235/75R15 Cordovan XRT Wild
   Trac steel-belted radial tire mounted on the Left Rear position.Based upon
   the D.O.T. number,this tire was manufactured during the 27th. week of 2000
   by Goodyear at their Fayetteville,N.C. Plant for T.B.C. Corporation-a large
   distributor of Private Brand tires.This tire is an appropriate fitment on a
   Mercury Mountaineer based upon size & load carrying capacity.

7. Ms.Moore purchased the 1997 Mercury Mountaineer vehicle (similar to the
   Ford Explorer) in May of 2003,less than 4 months before the accident.She
   stated in her deposition that the tires on the vehicle at the time of the
   accident were on the vehicle at the time of purchase.

8. The tire was approximately 80% worn with an average of 2/32" of usable
   tread remaining with relatively even tread wear.

<u>Background</u>

On August 29th.2003,according to deposition testimony of Ms.B. Moore,she was
returning from a conference in Perdido Beach to her residence in Montgomery in
her 1997 Mercury Mountaineer.She was traveling North on I-65 in rainy
weather.She estimated her speed at 60 -65 m.p.h. & at 2:25 p.m. near the 106.1

2

*TIRExpertise Inc*

mile post,she experienced a rapid deflation of the Left Rear tire,lost control,crossed the median & impacted the plaintiffs' vehicles,which were traveling South-bound on I-65.Although accident scene photographs show the median as being largely grassy there are also regularly spaced concrete culverts located in the median.The Left rear tire suffered massive trauma resulting in multiple sidewall splits & 2 areas in the tread portion where the impacts had completely severed the tire structure in the tread area.

<u>Qualifications of P.L.Flanner.</u>

I retired from Goodyear Dunlop Tires North America at the end of 2003 after a 45 year career in various Technical & Managerial capacities.My attached curriculum vitae lists the positions held over that period. I hold a Higher National Certificate in Applied Physics.

I joined Dunlop Tyres Ltd. at their World Technical Headquarters in Birmingham,England in 1958 as a Technical Trainee.After assignments in Quality Assurance,Tire Test Research & Radial Tire Technology transfer to Overseas plants,I was appointed to Dunlop U.S.A.'s HQ in Buffalo N.Y. in 1976. to continue with the transfer of Dunlop European Radial Tire Technology to the North American Plants.Additionally,I established relationships with the U.S. Offices of vehicle manufacturers fitting Dunlop tires & set-up a Field/Customer Service function to gather & analyse complaints on imported Dunlop tires.This model was adopted Company-wide & I headed up that Organization & also introduced the techniques for statistical analysis of product performance as a tool to continually improve the performance & acceptance of Dunlop tire products in the U.S.A.This also included the analysis & dissection of tires returned from the market & coordinating the adoption & evaluation of corrective countermeasures.Over that & subsequent periods I examined many thousands of tires-motorcycle,passenger car,light & medium truck,industrial & O.T.R. tires.

Other areas of expertise include design,development & testing of passenger car,light truck & medium truck radial tires for the U.S. market.At the time of my retirement I was Product Evaluation Manager at the Huntsville,Alabama facility charged with the testing & analysis of Dunlop products to Customer,Federal & stringent internal Dunlop requirements.

After my retirement I established TIRExpertise Inc.,specializing in Tire Consultancy & Tire Failure Analysis in Madison,Alabama.My business covers many types of tires ranging from Motorcycle,Passenger Car,Light Truck & Medium Truck tires to large Off-The-Road Earthmover tires.I accept commissions from both Plaintiffs & Defendants,where I & they feel my knowledge & experience would be beneficial.

This broad experience makes me qualified to deliver authoritative opinions in areas of my expertise in regard to the Moore tire.

<u>Methodology;The Data or any Information Considered by the Witness in Forming His Opinion.</u>

3

*TIRExpertise Inc*

The primary basis for opinions expressed in this Report was derived from detailed examination of the incident tire from the Moore vehicle utilizing visual,tactile & measurement techniques & methods well-known in the tire failure analysis community.

The examination notes from inspection of the incident tire are appended,as are copies of digital photographs.

Additionally,I have reviewed the following information sources:-

Deposition.

    1.  Moore,Bertha M. August 7,2007.

Accident Report.

    1.  Alabama Uniform Traffic Accident Report,August 29,2003 by Trooper Fisher.

Accident Scene Photographs.

    1.  Provided by J.C.Sparrow.

Other Documents.

    1.  "Who Makes It & Where"-a Bennett Garfield Publication.

    2.  "Tire Guide"-a Bennett Garfield Publication.

    3.  "The Tire & Rim Association Yearbook."

    4.  "The Investigator's Guides to Tire Failures.Chapter 6-'Penetrations & Punctures' " R.J.Grogan.Institute of Police Technology & Management.

Any Exhibit to be Used as a Summary or in Support of the Opinions.

    1.  Tire Report & Opinions.

    2.  Tire Examination Notes.

    3.  Incident Tire.

    4.  Wear Measurements.

    5.  Digital Photographs of Incident Tire.

    6.  Literature References denoted in the Report or Excerpts there from.

The Qualifications of the Witness including a List of Publications Authored by the Witness within the Preceding Ten(10) Years.

A curriculum vitae is attached hereto.All publications authored during the preceding ten(10) years were made during my employment with Dunlop & Goodyear & are subject to Confidentiality Agreements.

Compensation to be Paid for the Study & Testimony.

A copy of my Professional Services Agreement is Attached.

Listing of Other Cases the Witness has Testified in as an Expert Witness at Trial or Deposition within the Preceding Four(4) Years.

*TIRExpertise Inc*

    A list reflecting the above-required information is included in my curriculum vitae.

    I reserve the right to supplement this report should additional information become available.

Peter L. Flanner.

President,

*TIRExpertise Inc.*

Date: 9-17-2007

5

EXHIBIT "B"



**O:  Point of tread depth gauge projecting through region of penetration**

EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
Northern Division

MICHAEL ALLEN,                    )
                                  )
    Plaintiff,                    )Case No. 2:06-cv-879-WKW
                                  )
-vs-                              )
                                  )
UNITED STATES OF AMERICA,         )
                                  )
    Defendant.                    )

---

WALLACE MONTGOMERY, et al.,)
                                  )
    Plaintiff,                    )Case No. 2:06-cv-880-WKW
-vs-                              )
                                  )
UNITED STATES OF AMERICA,         )
                                  )
    Defendant.                    )

## C A P T I O N

THE DISCOVERY DEPOSITION OF PETER FLANNER, taken
pursuant to Notice before R. Keith Kennedy, a Notary Public
for the State of Alabama at Large, on the 13th day of
November 2007, beginning at approximately 9:00 a.m., at the
law offices of Heninger Garrison Davis, L.L.C., 2224 1st
Avenue North, Birmingham, Alabama; said deposition taken
pursuant to the Federal Rules of Civil Procedure.

### KENNEDY REPORTING SERVICES
205 20TH STREET NORTH, SUITE 408
BIRMINGHAM, ALABAMA 35203
(205) 251-2427

1    Defendant's Exhibit 2, which is your report.

2              (Reading)   The massive damage to the

3    tire occurred after the loss of control as the

4    vehicle crossed the central grass median, which

5    from accident scene photographs includes a

6    concrete culvert, became airborne and crashed

7    into the plaintiff's vehicle traveling in the

8    southbound lanes of I-65.

9    A          Yes.

10   Q          What was the basis for that particular

11   opinion regarding the damage to the tire

12   occurring after loss of control?

13   A          Well, I've looked at a lot of failed

14   tires and I've never seen a tire with more

15   massive damage than this one ever.  This really

16   did take a hit.

17             So this sort of damage that we're

18   looking at can only have occurred in my view at

19   relatively high rate of speed and the vehicle

20   impacting something other than a grass median

21   had to be something really substantial because

22   it actually split the tire down the tread, down

23   the center of the tread.  And that's shown on --

1    in some of my photographs.  And that's very,

2    very difficult.

3    Q          If you could, just identify one of

4    those photographs and we'll mark it as a

5    Defendant's Exhibit.

6    A          It's very difficult to split a tire

7    tread down the center.  And in the tire testing

8    business we've been trying to do it for years

9    unsuccessfully because it's very difficult to

10   do.  And it requires so much force it becomes a

11   little bit of a hazard for anybody performing

12   the test.

13            And, so, that said, I've never seen a

14   tire with this much damage, particularly in the

15   tread area.  And my -- it can only be

16   supposition, is that the vehicle hit a part of a

17   concrete culvert, which was probably raised,

18   particularly over the grass median, such that

19   all of the weight of the vehicle fell onto that

20   area of the tire and it just destroyed it.

21            And let me just find that photograph.

22            MR. DEGARIS:  Is that the one?

23            THE WITNESS:  That's the one.

EXHIBIT "D"

# Peter Flanner
## President,
### *TIRExpertise Inc.*

## Tire Consultancy and Failed Tire Analysis.

104,Bluebelle Drive,
Madison,
AL,35758.

Phone/Fax (256)772 – 4971
Cell (256)655 – 3465
eMail ; plflanner@AOL.com.

## Work Experience

45 years experience – 18 in the U.K. and 27 in the U.S.A. in a wide variety of
Technical positions covering:-
\* Tire Engineering/Development \* Tire Testing \* Field/Customer
Service and \* Product Performance Analysis for most tire products.

2004 – Date.                                 Madison,AL.
Established *TIRExpertise Inc.* specializing in Tire Consultancy and Failed Tire Analysis.

1999 – 2003          GDTNA                   Huntsville,AL.
Manager,Product Evaluation.
Managed all Compliance testing of Huntsville – made tires to Federal Regulations
and Internal requirements.

1997 – 1999          Dunlop Tire Corp.       Huntsville,AL.
Senior Tire Development Engineer.
Developed Passenger & Light Truck tires to stringent Performance & Quality standards.

1994 – 1997          Dunlop Tire Corp.       Huntsville,AL.
Manager,Tire Product Performance Analysis.
Managed a team charged with identifying tire performance anomalies and initiating
corrective action.

1992 – 1994          Dunlop Tire Corp.       Los Angeles,CA.
Product Support Manager.
Responsible for Technical Contacts with major O.E. Customers – Honda/Acura,Nissan/
Infiniti,Toyota/Lexus,Isuzu,Boeing & McDonnell Douglas for Passenger Car,Light
Truck,Medium Truck,Industrial & Aircraft tires.

1

1989 – 1992          Dunlop Tire Corp.          Buffalo,NY.
Senior Tire Development Engineer.
Developed Medium Radial Truck tires for the North American market.

1985 – 1989          Dunlop Tire Corp.          Buffalo,NY.
Manager,Technical Consumer Services.
Responsible for managing DTC's Field Adjustment & Analysis,Product Service and
Consumer Affairs activities for all tire products e.g. Motorcycle,Passenger Car,Light &
Medium Truck tires.
Established Tire Support effort for Jaguar IMSA Racing team.
Represented Dunlop World Aviation interests in Tire & Rim Association Aircraft Tire
Sub-Committee & participated in RMA/SAE establishment of ARP4834 Aircraft Tire
Retreading Practice for Bias and Radial Aircraft tires.

1982 – 1985          Dunlop Tire Corp.          Buffalo,NY.
Manager,North American Tire Development Group.
Responsible for the transfer of Medium Radial Truck Tire Technology into DTC's
operations and extending Field Service activities to include these Products.

1976 – 1981          Dunlop Tire Corp.          Buffalo,NY.
Technical Liaison Officer.
Continuing participation in the effective transfer of Radial Tire Technology into DTC's
Development Group and Huntsville Plant.
Organized and managed Field/Customer Service activities for imported vehicles fitted
with Dunlop tires e.g. Toyota,Honda,Nissan,Jaguar,Rolls-Royce,Lotus,Mercedes,Porsche
,BMW,Audi,Volkswagen.

1969 – 1976          Dunlop UK Ltd.          Birmingham,UK.
Senior Technologist,Overseas Tire Technical Dept.
Responsible for the provision of Design,Process and Manufacturing information to
Dunlop's Overseas Plants for all tire products:this included a 2 year Special Assignment
to transfer radial tire technology from Dunlop's European Plants to Dunlop Tire Corp.'s
facilities.

1962 – 1969          Dunlop UK Ltd.          Birmingham,UK.
Technologist,Tire Testing.
Responsible for developing specialized testing procedures and associated equipment for
evaluating special properties of tires e.g. Cornering Behavior,Wet Grip,Rolling
Resistance,High Speed performance for car,motorcycle and racing tires.

1958 – 1962          Dunlop UK Ltd.          Birmingham,UK.
Joined Dunlop UK at their World Technical Headquarters in Birmingham in their Tire
Technical Intake Program – a 3year course which included exposure to most aspects of
tire design,process,manufacture and quality assurance together with opportunities for
further education.

2

Education & Training.
- General Certificate of Education in Mathematics,Physics,English,French & German.
- Higher National Certificate in Applied Physics.


Microsoft Office Classes.
QS 9000,ISO 9001:2002,TS 17025,ISO 14001.
Coopers & Lybrand -- Excellence Through Teamwork (ETT).

Testimony List.
01/2005 Wiest vs. Bridgestone/Firestone -- Dale Haralson,Arizona.Deposition.
05/2005 Kirkland vs. Sam's Club -- William Frates II,Florida.Deposition.
06/2007 Brown vs. Sam's Club -- William Frates II,Florida,Deposition.



Signed:

P. L. FLANNER

Date:    9- 10 -2007

3