**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **MICHAEL ALLEN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Case No. 2:06-cv-879-WKW** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

| | |
|---|---|
| **WALLACE MONTGOMERY, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| V. ) | **Case No. 2:06-cv-880-WKW** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFFS' JOINT MOTION TO HAVE LIABILITY ADMITTED FOR THE PURPOSES OF TRIAL**

COME NOW, the Plaintiffs and move to have liability of the United States of America admitted for the purposes of trial. As grounds, Plaintiffs show unto the Court the following:

1. At the time of this wreck, the Allen Plaintiffs had a policy of insurance with State Farm. One provision of that policy included coverage for medical payments benefits. Another provided for payment of property damage to the Allens' automobile. Following the accident with Bertha Moore, State Farm paid medical benefits directly to the Allens pursuant to the provisions of the Allens' policy of insurance.

2. In a letter dated May 4, 2005, from Temeka Holmes, Claims Representative for State Farm Insurance Companies (see Exhibit A), State Farm states its intention to seek recovery directly from the U.S. Department of Justice for the property damage **and** medical payments ("MPC sub claims" or "med pay") made to the Allens (due to Bertha Moore's negligence in causing the August 29, 2003 accident).

3. On February 21, 2008, in discussions with Counsel for the Government, it was disclosed that State Farm had in fact filed an "administrative claim" against the Government regarding its subrogation interest in the property damage and med pay benefits paid to the Allens. In these discussions, it was also disclosed that the United States had <u>paid</u> State Farm's claims.

4. Plaintiffs' counsel contacted State Farm and in a letter dated February 21, 2008, from Ms. Holmes (see Exhibit B), it is stated that "State Farm received subrogation recovery from the U.S. Department of Treasury in the amount of $28,925.00 for property damage and $7,722.26 for medical payments coverage."

5. In a subsequent call to State Farm's subrogation unit in Illinois on February 22, 2008, it was learned that State Farm filed an SF-95 (the same administrative claim form filed by the Allens and Montgomerys to begin the Administrative Claim process) claiming subrogation monies due to the negligence of the Government's employee, Bertha Moore. This claim was paid. Copies of the relevant correspondence is attached hereto as Exhibit C.

6. The claim was obviously filed and paid pursuant to 28 C.F.R. § 14.3(d), which recognizes that "[a] claim for loss partially compensated by an insurer with the rights of a subrogee may be presented by the parties individually, as their respective

interests appear," which means, as a leading treatise on the Federal Tort Claims Act ("FTCA") has noted, that "the subrogee may thus sue in his own name and right . . . ." 1 L. Jayson & Robert Longstreth, *Handling Federal Tort Claims* § 5.09, at 5-137 (2007).

  7. Importantly, however, such a subrogee "stands in the shoes of the subrogor, acquiring no greater rights than those under whom he claims," *id.,* and it is inconsistent of the United States to have settled the subrogation claim arising from the accident while continuing to challenge the underlying claim of liability. Indeed, this appears to be contrary to the **normal** policy of the United States.  As this same treatise notes: "Obviously, the federal agency adjudicating the claims will usually approach them with uniformity, that is, it is unlikely that the agency will concede liability with respect to one claimant and deny it as to another when the circumstances as to liability are identical." 3 L. Jayson & Robert Longstreth, *Handling Federal Tort Claims* § 17.05[3], at 17-40.1 (2007).

  8. At the very least, the decision to pay State Farm under these circumstances is an **admission of liability** if not an **estoppel** to contest liability.  Importantly, this is not a circumstance governed by Fed. R. Evid. 409, which limits the inadmissibility of medical payments as an admission of liability to cases where a party or someone acting on the party's behalf acts out of "benevolence."  Thus, "[s]ome courts have admitted into evidence the furnishing, offering, or promising to pay medical, hospital, or other expenses, if 'the surrounding circumstances indicate[d], not merely an act of benevolence, but some admission of fault on the part of the defendant.'" 2 Joseph McLaughlin, *Weinstein's Federal Evidence* § 409.03[2], at 409-6 (2d ed. 2007)(quoting *Arnold v. Owens*, 78 F.2d 495, 497 (4th Cir. 1935)(dictum)).

9. Moreover, the payment of the subrogated claim for property damage to the automobile is not a "medical, hospital, or similar expense" covered by Rule 409. Accordingly, notwithstanding the medical payments, the payment of the subrogated property damage claim can only be treated as an admission of liability in the circumstances of this case. *Accord, Great Coastal Express*, *Inc., v. Atlantic Mutual Companies*, 790 So. 2d 966, 970 (Ala. Civ. App. 2000)(trial court could have considered the evidence that defendant paid for certain clean-up expenses resulting from tanker-truck accident "as an admission of liability," because "nothing in Rule 409, Ala. R. Evid. 'disallows [evidence of ] the payment of . . . expenses [other than medical, hospital, or similar expenses] arising out of an injury, *even if offered as probative of underlying liability*") (quoting Charles Gamble, *McElroy's Alabama Evidence* § 188.05 (5th ed. 1996) (construing identical Alabama Rule of Evidence) (alterations and emphasis in original).

10. Indeed, if the payment of the subrogated claim constitutes--at the very least--an admission of liability, at worst it has **constitutional** implications under the due process and equal protection guarantees of the Fifth Amendment. There cannot be two more "similarly-situated" persons than subrogor and subrogee, since the latter "stands in the shoes" of the former, and the disparate treatment of the two is indefensible as a matter of constitutional doctrine, not to mention inconsistent with the Mission Statement of the Department of Justice where it is stated:

> **"Equal Justice Under the Law…**We enforce these laws fairly and uniformly to ensure that all Americans receive equal protection and justice under the law."

(Department of Justice Mission Statement, Exhibit D)

This begs the questions where is "fairness," "uniformity" and "justice" in this case? How can the Government pay an insurance company and then deny liability to the insured in whose "shoes" it stood to pursue the subrogation claim in the first instance." This is perhaps the reasons why, in the normal case, as noted above, "the federal agency adjudicating the claims will usually approach them with uniformity, that is, it is unlikely that the agency will concede liability with respect to one claimant and deny it as to another when the circumstances as to liability are identical." 3 L. Jayson & Robert Longstreth, *supra*, § 17.05[3] at 17-40.1 (2007).

11.     Alternatively, given the elaborate administrative claims procedures under the FTCA, the plaintiffs also submit that the doctrines of **res judicata, collateral estoppel, and/or judicial estoppel** operate to bar relitigation of liability as to the plaintiffs' case, even if the Court concludes the United States has not admitted liability by paying the insurance company's subrogation claim on the property damage or the separate and more persuasive med pay issue.

12.     In short, the trial here need only address plaintiffs' damages, and the plaintiffs submit that, in the interest of judicial economy, the Court proceed to hear and enter judgment on the damage issue alone.

WHEREFORE, the above premises considered, the Plaintiffs respectfully move that this Honorable Court have liability of the United States of American admitted for the purposes of trial.

Respectfully submitted this the 22nd day of February, 2008.

/s/ Annesley H. DeGaris
Annesley H. DeGaris (ASB-9182-A63A)
/s/ Elizabeth A. Ellis
Elizabeth A. Ellis (ASB-3521-A63E)
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, Alabama 35205
Telephone:  205-328-2200
Facsimile:  205-324-7896
adegaris@cwcd.com
bellis@cwcd.com
Attorneys for the Allen Plaintiffs

/s/ J. Callen Sparrow
J. Callen Sparrow (ASB-4515-R79J)
HENINGER GARRISON DAVIS, LLC
Post Office Box 11310
Birmingham, AL 35202
Telephone:  (205) 326-3336
Facsimile:  (205) 326-3332
csparrow@hgdlawfirm.com
Attorney for the Montgomery Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of February, 2008, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties:

Conor Kells
Gail K. Johnson
U.S. Department of Justice
Benjamin Franklin Station
Post Office Box 888
Washington, DC 20044

Attorney for Defendant, UNITED STATES OF AMERICA

/s/ Annesley H. DeGaris
Annesley H. DeGaris

# EXHIBIT A

# State Farm Insurance Companies



May 4, 2005

State Farm Insurance Companies
P.O. Box 830689
Birmingham, Alabama 35283

5/6/05

Annesley H. Degaris
Cory Watson Crowder & Degaris, P.C.
2131 Magnolia Ave
Birmingham, AL 35205-2808

RE:  Claim Number:  01-6470-304
     Date of Loss:  August 29, 2003
     Our Insured:   Micahel P Allen
     Your Client:   Michael, Lou Ellen and Lori Allen

Dear Mr. Degaris:

It has recently come to our attention, the tortfeasor Bertha Moore was in the course of her employment with the U.S. Department of Justice at the time of the accident. Therefore, they have advised they intend to consider the liability claims of your clients along with the other party in the loss, Ms. Montgomery. Their contact person is Kim Smith. She can be reached at P.O. Box 888 Washington, D.C. 20044. (202) 616-4233. We have placed them on notice of our property damage and MPC sub claims and intend to seek recovery direct from them.

Sincerely,

Temeka Holmes
Claim Representative
(205) 944-8325

State Farm Mutual Automobile Insurance Company

# EXHIBIT B

# State Farm Insurance Companies®



Birmingham ECF Claims
P.O. Box 830852
Birmingham, AL 35283
(205) 944-8300

February 21, 2008

Annesley Degaris
Cory, Watson, Crowder and Degaris
2131 Magnolia Avenue
Birmingham, AL 35205
Via US Mail and Facsimile

Re: Claim Number: 01-6470-304
Insured: Michael P. Allen

Dear Mr. Degaris:

Pursuant to your request, State Farm received subrogation recovery from the U.S. Department of Treasury in the amount of $28,925.00 for property damage and $7722.26 for medical payments coverage.

Should you have any questions or need any additional information, please advise.

Sincerely,

Temeka Holmes
Claim Representative
(205) 944-8325

# EXHIBIT C

07/06/2005 15:23 FAX 205 944 8294   BIRMINGHAM CLAIMS   ☒002



**U.S. Department of Justice**

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

---

Kimberly P. Smith
Paralegal Specialist

Post Office Box 888
Benjamin Franklin Station
Washington, D.C. 20044

Telephone: (202) 616-4233
Facsimile: (202) 616-5200

PJP:KPSmith
157-16-NEW

June 29, 2005

BHAM CLAI...
JUL 06 2005

Ms. Temeka Holmes
Claim Representative
State Farm Insurance Companies
Post Office Box 630689
Birmingham, Alabama 35283

Re: Administrative tort claim of State Farm Insurance a/s/o Michael P. Allen
Your Claim Number 01-6470-304

Dear Ms. Holmes:

I have been authorized to settle the administrative tort claim of State Farm Insurance a/s/o Michael P. Allen in the amount of $36,647.26. I have enclosed a Voucher for Payment in the amount of $36,647.26. Please sign the Voucher and return it to me at the above-referenced address. Also, please be advised that the Department of Treasury requires that a Tax Identification Number of the payee be indicated in section A(5) of the Voucher. Upon receipt of the signed Voucher, I will begin the process to effectuate payment.

Very truly yours,

Kimberly P. Smith
Paralegal, Torts Branch
Civil Division

Enclosure

cc:   James J. Dubois
      Assistant U.S. Attorney
      Middle District of Alabama

07/06/2005 15:23 FAX 205 944 8294    BIRMINGHAM CLAIMS                   ☐003

01-6470-304

## Judgment Fund Voucher for Payment

1. Total Amount: $36,647.26
2. Submitting Agency Contact Name: Kimberly P. Smith
   Telephone Number: 202-616-4233

3. Electronic Funds Transfer (EFT) Information:
   a) Payee Account Name: _____
   b) American Banking Association (ABA) Routing Number (9 digits): _____
   c) Payee Account Number: _____
   d) Checking: ☐  Savings: ☐
   e) Financial Institution Name, City, State: _____

   BHAM CLAIMS CENTER
   JUL 06 2005

4. Interagency Payment System Information:
   a) Agency Name: _____
   b) Agency Location Code (ALC) Number: (8 digits): _____
   c) Standard General Ledger (SGL) Number (4 digits): _____
   d) Treasury Account Symbol (TAS): _____

5. Mailing Address for Check: (Payee name not to exceed 32 Characters.)
   a) Payee Name: _____
   b) Payee Name: _____
   c) Address Line 1: PO BOX 2371, Bloomington, IL 61702-2371
   d) Address Line 2: _____
   e) City: _____ State: _____ Zip Code: _____

6. Taxpayer Identification Number (s):
   a) State Farm Insurance Companies a/s/o Michael P. Allen
   b) 370653100
   c) _____

7. Reimbursement Information for Contract Disputes Act (CDA), No FEAR Act, and Firefighters Fund:
   a) Agency Name: _____
   b) Contact Name: _____
   c) Contract Number (CDA cases): _____
   d) Telephone Number: _____
   e) Address: _____
   f) City: _____ State: _____ Zip Code: _____

8. If payment will be made in a foreign currency please provide the following information:
   Country: _____ Currency: _____

9. FOR USE BY JUDGMENT FUND BRANCH ONLY:
   Z Number: _____  I/D Number: _____  GLOWS Code/Agency: _____

   Claim Analyst *Signature and Date*                Amount to Pay                Appropriation Code

   Claim Reviewer *Initials and Date*

FMS Form 197 page 1 of 2 (PREVIOUS EDITIONS ARE OBSOLETE)                    DEPARTMENT OF THE TREASURY
12-03                                                                         FINANCIAL MANAGEMENT SERVICE

07/06/2005 15:23 FAX 205 944 8294        BIRMINGHAM CLAIMS

01-6470-304

@004

## Judgment Fund Voucher for Payment

BHAM CLAIMS CENTER
JUL 0 6 2005

**10. Acceptance by Claimants:**

NOTE: For use ONLY where the settlement is (I) for cash, (ii) in an amount that does not exceed $200,000, and (iii) a court order approving the settlement is not warranted. For all other situations, a final judgment or a standard Department of Justice *Stipulation For Compromise Settlement And Release* must be attached.

Each claimant/plaintiff and his/her guardians, heirs, executors, administrators, and assigns agree to and do accept this settlement in full settlement and satisfaction and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including without limitation any claims for fees, costs, expenses, survival, or wrongful death, arising from any and all known or unknown, foreseen or unforeseen bodily injuries, personal injuries, death, or damage to property, which they may have or hereafter acquire against the United States of America, its agents, servants, or employees, on account of the subject matter of the administrative claim or suit, or that relate or pertain to or arise from, directly or indirectly, the subject matter of the administrative claim or suit. Each claimant/plaintiff and his/her guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States of America, its agents, servants, and employees, from and against any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including without limitation claims for subrogation, indemnity, contribution, or lien of any kind, or for fees, costs, expenses, survival or wrongful death that relate or pertain to or arise from, directly or indirectly, any act or omission that relates to the subject matter of the administrative claim or suit.

Date: 7-13-05

(SIGN ORIGINAL ONLY)
_____
STATE FARM INSURANCE COMPANIES
REPRESENTATIVE

_____Megg Beverage_____
(Claimant(s) sign above)

**11. AGENCY APPROVING OFFICIAL:** This claim has been fully examined in accordance with Statutory Citation _28 U.S.C. Section 1346(b), 2672, 2677_ and approved in the amount of $ 36,647.26

Authorized Signature: _____

Title: Phyllis J. Pyles, Director

Date: _____

FMS FORM 197 page 2 of 2 (PREVIOUS EDITIONS ARE OBSOLETE)
12-03

DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE

# EXHIBIT D

# Section I
## Management's Discussion and Analysis (Unaudited)

Established July 1, 1870 (28 U.S.C. §§ 501 and 503), the Department of Justice (DOJ or the Department) is headed by the Attorney General of the United States. It was created to control federal law enforcement and all criminal prosecutions and civil suits in which the United States has an interest. The structure of the Department has changed over the years, with the addition of Deputy Attorneys General and the formation of several Divisions and components; however, unchanged is the commitment and response to securing equal justice for all, enhancing respect for the rule of law, and making America a safer and more secure Nation.

The mission of the Department of Justice, as reflected in its Strategic Plan for the fiscal years (FY) 2007-2012, is as follows:

### Mission

*"...to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans."*

In carrying out our mission, we are guided by the following core values:

**Equal Justice Under the Law.** Upholding the laws of the United States is the solemn responsibility entrusted to us by the American people. We enforce these laws fairly and uniformly to ensure that all Americans receive equal protection and justice under the law.

**Honesty and Integrity.** We adhere to the highest standards of ethical behavior.

**Commitment to Excellence.** We seek to provide the highest levels of service to the American people. We are effective and responsible stewards of the taxpayers' dollars.

**Respect for the Worth and Dignity of Each Human Being.** We treat each other and those we serve with fairness, dignity, and compassion. We value differences in people and ideas. We are committed to the well being of our employees and to providing opportunities for individual growth and development.

### Strategic Goals and Objectives

From our mission and core values stem the Department's strategic and annual planning processes. The Department embraces the concepts of performance-based management. At the heart of these concepts is the notion that improved performance is realized through greater focus on mission, agreement on goals and objectives, and timely reporting of results. In the Department, strategic planning is the first step in an iterative planning and implementation cycle. This cycle, which is the center of the Department's efforts to implement performance-based management, involves setting long-term goals and objectives, translating these goals and objectives into budgets and program plans, implementing programs, monitoring performance, and evaluating results. In this cycle, the Department's Strategic Plan provides the overarching framework for component and function-specific plans as well as annual performance plans, budgets, and reports. In FY 2007, the Attorney General issued a revised Strategic Plan for FYs 2007-2012. (The Strategic Plan is available electronically on the Department's website at: http://www.usdoj.gov/jmd/mps/strategic2007-2012/index.html.).