IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL ALLEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:06-cv-879-WKW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

| | |
|---|---|
| WALLACE MONTGOMERY, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| V. ) | Case No. 2:06-cv-880-WKW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S MOTION TO HAVE CERTAIN MEDICAL MATTERS DEEMED ADMITTED FOR THE PURPOSES OF TRIAL

COME NOW, the Plaintiff's Michael P. Allen, Lou Ellen Allen, and Lorie S. Allen ("the Allens") and move to have and the medical reasonableness and necessity of certain medical treatment be deemed admitted for purposes of trial. As grounds here for, Plaintiffs show unto the Court the following:

1. In the first paragraph of Dr. Keith Weaver's new report received February 7, 2008, he states the following:

> "The following medical records were reviewed and taken into consideration for additional opinions in the matter of Michael P. Allen, Lou Ellen Allen and Lorie Suzanne Allen v. United States:

"(1) Butler County Emergency Medical Services, LLC, (2) Evergreen Medical Center – Dr. Marcia R. Cumagun and Dr. Steven Teplick (3) Baptist Medical Center – Montclair – Dr. Gregory W. Ayers, (4) The Downtown Clinic – Dr. Leon Campbell, Jr., (5) The Radiology Clinic, LLC, (6) Birmingham Radiology Group, (7) Women's Care Specialists, P.C. – Dr. Jennifer Maddox, (8) Chabot Chiropractic Clinic – Dr. Jeanne Chabot, (9) Physiotherapy Associates of Alabama, PC, (10) Conecuh County Emergency Medical Services, LLC, (11) The Kirklin Clinic – Dr. K. David Moore, (12) Michael Laser Vision – Alabama Eye & Cataract Center, (13) Alabama Sports Medicine and Orthopedic Center – Dr. E. Lyle Cain, Jr. (14) Highlands Diagnostic Center, (15) HealthSouth Medical Center, (16) Brookwood Medical Center – Dr. Charles R. Shumate and (17) Anesthesiology & Pain Medicine – Dr. Lucy Chapman."

(see Exhibit A)

2. In paragraph 3 of his report, Dr. Weaver states:

"The services rendered by the practitioners identified by number in the first paragraph: 1, 2, 3, 5, 6, 8, 9, 10, 11, 14, 15, 17 were **medically reasonable and necessary for the diagnosis and treatment of the Allen's accident injuries.**"

3. In paragraph 6 of his report, Dr. Weaver states:

"The services rendered by (7) Women's Care Specialist, PC- Dr. Jennifer Maddox to Lori Allen was in part due to the results of the 8/29/03 car accident. **They were reasonable and medically necessary**. Ms. Allen was seen on 9/10/03 to follow up on an abnormal test and she asked Dr. Maddox to check her bruised right breast."

4. In his deposition taken February 14, 2008, Dr. Weaver testifies that the aforementioned services were medically necessary and reasonable to treat the Allen injuries for their wreck (Deposition of Dr. Weaver, Exhibit B, pp 114)

5. In addition to admitting the above mentioned practitioners' course of treatment and services were medically reasononable and necessary for the Allens, Dr. Weaver also testified that the charges were reasonable

> Q    Excuse me. Medically, reasonable, and necessary for the diagnosis and treatment of the Allens' accidental injuries; is that correct?
> A    Verbatim.
> Q    Good. As far as the charges for those services, Doctor, were the charges for those services reasonable?

> A    For the ones listed?
> Q    Yes. Just for the ones listed. I won't repeat them all again but just the ones I just –
> A    I would say that I have not analyzed each and every one of them, but I would assume that they would be.

(Deposition of Dr. Weaver taken February 14, 2008, Exhibit B, p 114)

6. On page 150 of Dr. Weaver's deposition taken February 14, 2008 (see Exhibit B), Dr. Weaver also admits Dr. Shumate's treatment of Mrs. Allen's hernia was medically necessary.

> Q    Let me ask you: So you don't dispute that obviously that the medical treatment of Dr. Shumate was medically necessary to treat the hernia?
> A    No, I do not.
> Q    Okay. And when you look at the records, you saw, of course the charges. Do you think the charges for that procedure by Dr. Shumate at Brookwood were reasonable?
> A    Yes.

WHEREFORE, the above premises considered, the Plaintiffs respectfully move this Honorable Court to deem the above matters admitted for the purpose of trial.

Respectfully submitted this the 22nd day of February, 2008,

/s/ Annesley H. DeGaris
Annesley H. DeGaris (ASB-9182-A63A)
CORY, WATSON, CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, Alabama 35205
Telephone: 205-328-2200
Facsimile: 205-324-7896

Attorney for the Allen Plaintiffs.

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of February, 2008, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties:

Conor Kells
Gail K. Johnson
Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
Benjamin Franklin Station
Post Office Box 888
Washington, DC 20044
Attorney for Defendant, UNITED STATES OF AMERICA


J. Callen Sparrow
HENINGER GARRISON DAVIS, LLC
Post Office Box 11310
Birmingham, AL 35202
Attorney for the Montgomery Plaintiffs


/s/ Annesley H. DeGaris
Annesley H. DeGaris

# EXHIBIT A

FEB-07-2008 THU 03:44 PM USDCJ                                    FAX NO. 2026165200                      P. 04
02/07/2008 THU 12:31  FAX 2057882663 Birmingham Bone & Joint                                            ☒003/004

The following medical records were reviewed and taken into consideration for additional opinions in the matter of Michael P. Allen, Lou Ellen Allen and Lorie Suzanne Allen v United States: (1) Butler County Emergency Medical Services, LLC, (2) Evergreen Medical Center - Dr. Maria R. Cumagun and Dr. Steven Teplick (3) Baptist Medical Center-Montclair - Dr. Gregory W. Ayers, (4) The Downtown Clinic - Dr. Leon Campbell, Jr., (5) The Radiology Clinic, LLC, (6) Birmingham Radiology Group, (7) Women's Care Specialists, PC - Dr. Jennifer Maddox, (8) Chabot Chiropractic Clinic - Dr. Jeanne Chabot, (9) Physiotherapy Associates of Alabama, PC, (10) Conecuh County Emergency Medical Services, LLC, (11) The Kirklin Clinic - Dr. K. David Moore, (12) Michael Laser Vision - Alabama Eye & Cataract Center, (13) Alabama Sports Medicine and Orthopaedic Center - Dr. E. Lyle Cain, Jr., (14) Highland Diagnostic Center, (15) HealthSouth Medical Center, (16) Brookwood Medical Center - Dr. Charles R. Shumate and (17) Anesthesiology & Pain Medicine - Dr. Lucy Chapman.

Each of these records was entirely legible except for those of Dr. Leon Campbell. The only typed documents contained in his records were letters to Mr. Annesley H. DeGaris. All others were hand written and contained numerous abbreviations, sketches, circles, arrows and CPT codes. It is likely that typed records were not included for review since many of the opinions contained in the narrative summaries to Mr. DeGaris are not identified in the hand written office records.

The services rendered by the practitioners identified by number in the first paragraph: 1, 2, 3, 5, 6, 8, 9, 10, 11, 14, 15, and 17 were medically reasonable and necessary for the diagnosis and treatment of the Allen's accidental injuries.

The services rendered by (4) Dr. Leon Campbell are concerning not only for medical necessity but potentially for patient safety as well. Dr. Campbell's specialty is not identified on his letterhead or with the Alabama Board of Medical Examiners. The poor handwriting compromises the full understanding of these records. Various abbreviations for nerve blocks are the extent of procedure documentation including ICNB - intercostal nerve block, ONB - occipital nerve block, TFB - thoracic facet block, and PNB - peripheral nerve block. It would be highly unusual for a thoracic facet block to be performed without the aid of a fluoroscope (live x-ray). It would be highly unusual for an intercostal nerve block to be performed anywhere but in a general hospital by an anesthesiologist where resuscitation measures for inadvertent intravascular injection or pneumothorax are readily available. More likely than not, Dr. Campbell actually performed trigger point and subacromial bursal injections in an office setting.

Many of the diagnoses listed in the letters to Mr. DeGaris are not identified in Campbell's hand written notes or contained in the records of practitioners listed in the first paragraph. Specifically for Mr. Michael Allen these include: (A) the diagnoses of traumatic brain injury and loss of consciousness, (B) tinnitus, and (C) cardiac contusion. Specifically for Mrs. Lou Ellen Allen these include: (A) traumatic brain injury and loss of consciousness, (B) liver contusion, (C) diaphragmatic hernia -even though not

FEB-07-2008 THU 03:45 PM USDOJ                          FAX NO. 2026165200                P. 05
02/07/2008 THU 12:02  FAX 2057682063 Birmingham Bone & Joint                             ☒003/004

Page 2

demonstrated on a 9/8/03 chest x-ray or a 2/3/04 CT chest, (D) pulmonary contusions with a bloody pleural effusion - even though this same 9/8/03 chest x-ray noted left costophrenic blunting "suggesting a small pleural effusion,..., no pneumonia, *contusion*, or mass lesion is seen", (E) cardiac contusion, and (F) post-traumatic stress disorder. Specifically for Miss Lorie Allen this included: traumatic brain injury with loss of consciousness.

The services rendered by (7) Women's Care Specialist, PC - Dr. Jennifer Maddox to Lori Allen was in part due to the results of the 8/29/03 car accident. They were reasonable and medically necessary. Ms. Allen was seen on 9/10/03 to follow up on an abnormal test and she asked Dr. Maddox to check her bruised right breast.

The services rendered to Mr. Michael Allen by (12) Michael Laser Vision - Alabama Eye & Cataract Center were not medically necessary for conditions resulting from the 8/29/03 car accident.

The services rendered to Mr. Michael Allen by (13) Alabama Sports Medicine & Orthopaedic Center - Dr. E. Lyle Cain, Jr., although medically necessary, may not be entirely related to the conditions resulting from the 8/29/03 car accident. The following diagnoses are clearly related: proximal right fibular fracture and chondral lesions of the right patella. Diagnoses that are degenerative conditions that are not clearly associated with this accident are: right medial meniscal tear, chondromalacia of the weight-bearing surface of the right medial femoral condyle, degenerative left acromio-clavicular joint with shoulder impingment, and degenerative right acromio-clavicular joint with shoulder impingment. On 2/11/04 Dr. Cain's noted "During the past 4 weeks the patient has experienced knee locking and catching". These are symptoms of meniscal pathology that were noted 5 1/2 months post injury. The 10/29/03 MRI scan noted "Signal abnormality is present within the medial meniscus which is mostly *degenerative*". Chondromalacia of the weight bearing portion of the medial femoral condyle is a common finding in a 55 year old man with degenerative meniscal pathology. Acromio-clavicular arthritis with impingment is also a common finding someone 55 years old. The 2/3/04 MRI of the right shoulder noted "mild proliferative disease of the AC joint producing local mass effect on the supraspinatus tendon. No rotator cuff tear". The 2/3/04 MRI of the left shoulder showed "AC joint degenerative disease ....similar in degree to the right side. No rotator cuff tear". On 9/16/03 Dr. K. David Moore noted a proximal fibular fracture and that Mr. Allen's stated that his "pain on the posterolateral aspect of his knee which was sharp in nature" had resolved. Dr. Moore made no mention of mechanical symptoms - i.e. catching, locking, giving way - with the right knee, no mention of right shoulder pain and no mention of left shoulder pain.

The services rendered to Lou Ellen Allen by (16) Brookwood Medical Center - Dr. Charles R. Shumate, although medically necessary to treat an abdominal hernia, are not clearly related to the trauma of 8/29/03. Dr. Shumate's records of 6/22/05 and 6/23/05 do not state a cause for the hernia. Dr. Leon Campbell's records do mention a 7+ centimeter

FEB-07-2008 THU 03:46 PM USDOJ                           FAX NO. 2026165200                    P. 05
02/07/2008 THU 12:32  FAX 2057882663 Birmingham Bone & Joint                                  ☒004/004

Page 3

mass (larger in diameter than a tennis ball) on 5/27/05 with a diagram and the comment "same as 10-29-03 exam, needs surgical evaluation & management". The evaluations between these two dates - 12/3/03, 2/5/04, 4/1/04, 5/5/04, 10/8/04, 1/31/05 each have 'supple' checked as present, 'NT' (? non-tender) checked as present, and hand written 'soft'. There is no mention of this large mass.

The charges for services rendered by Dr. Campbell are unusually high. As an example, the Patient Ledger for Lou Ellen Allen printed on 8/16/04, contain the total charges for 9/8/03 as $2850, 9/24/03 as $2270, and 10/8/03 as $2174. There may be facility fees incorporated into these examples to explain the high charges. Most of the charges were for injections. Lou Ellen Allen's 9/8/03 charges included: 64470, a CPT code for a cervical or thoracic facet block ($425); 64405, a CPT code for a greater occipital nerve block ($250), 64420, a CPT code for a *single* intercostal nerve block ($1300), 64418, a CPT code for a suprascapular nerve block ($310). Despite this being an unusual number/ type of injections, the coding for these services does not seem accurate. For example, the CPT for an *intercostal nerve, single* is 64420. CPT for *intercostal nerves, multiple, regional block* is 64421. If there is consistency in Dr. Campbell's billing, using the 12/3/03 charge of $325 for code 64420, the 9/8/03 charge of $1300 ($325 x 4) is actually for *four* blocks. The proper code should have been 64421. Icon, an anesthesia billing company for the 18 anesthesiologists at BMC Princeton, Trinity, and BMC Shelby have charges of $385 for 64420 and $400 for 64421. This entire group of board certified anesthiologists, seven of whom also have pain board certification, have performed a total of four intercostal nerve blocks (CPT 64420), three (CPT 64421) and **zero** suprascapular nerve (64418) blocks for this same year. Dr. Campbell has performed a similar number of intercostals nerve blocks just on Lou Ellen Allen.

# EXHIBIT B

Page 1

## NATIONAL COURT REPORTING

```
            IN THE UNITED STATES DISTRICT COURT FOR

                THE MIDDLE DISTRICT OF ALABAMA

                        NORTHERN DIVISION


    MICHAEL ALLEN, et, al.,

            Plaintiffs,

    v.                              CV-2:06-cv-879-WKW

    UNITED STATES OF AMERICA,

            Defendant.


            S T I P U L A T I O N S


            IT IS STIPULATED AND AGREED
    by and between the parties through their
    respective counsel, that the deposition of
    ******************************************
            DR. KEITH WEAVER
    ******************************************
    may be taken before Becky Harris,
    Commissioner, at the offices of Dr. Keith
    Weaver, Birmingham Bone and Joint Surgeons,
    924 Fulton Street, S.W., Birmingham,
    Alabama, on February 14, 2008.
```

**367 VALLEY AVENUE**
**1-800-638-3917  Birmingham, Alabama 35209   (205) 252-6205**

    1   practitioners and the services they

    2   performed that those cost and charges were

    3   medically reasonable and necessary for the

    4   diagnosis and treatment of the Allens'

    5   accidental injuries; is that correct?

    6        MR. KELLS: I'm going to object. He

    7   doesn't mention cost. He says treatment.

    8       Q  Excuse me. Medically, reasonable,

    9   and necessary for the diagnosis and

   10   treatment of the Allens' accidental

   11   injuries; is that correct?

   12       A  Verbatim.

   13       Q  Good. As far as the charges for

   14   those services, Doctor, were the charges

   15   for those services reasonable?

   16       A  For the ones listed?

   17       Q  Yes. Just for the ones listed. I

   18   won't repeat them all again but just the

   19   ones I just --

   20       A  I would say that I have not analyzed

   21   each and every one of them, but I would

   22   assume that they would be.

   23       Q  Do you have any reason based on your